UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**DORMAN ANGEL, et al.,**
    **Plaintiffs**

                                                                 **Civil Action No. C-10-467**
**v.**                                                                **JUDGE: BECKWITH**

**INTERNATIONAL PAPER COMPANY, et al.,**
    **Defendants.**

**INTERNATIONAL PAPER COMPANY'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

The Defendant, International Paper, hereby moves the Court for summary judgment pursuant to Fed. R. Civ. P. Rule 56. There are no genuine disputes of material fact and International Paper is entitled to summary judgment as a matter of law. A memorandum in support is attached.

                                                        Respectfully submitted,

                                                        INTERNATIONAL PAPER COMPANY


                                                        <u>/s Michael A. Roberts</u>_____
                                                        Counsel

| | |
|---|---|
| Michael Roberts, Esq. | W. Carter Younger, Esq. (admitted *pro hac vice)* |
| Graydon Head & Ritchey, LLP | McGuireWoods LLP |
| 1900 5th 3rd Center | One James Center |
| 511 Walnut Street | 901 East Cary Street |
| Cincinnati, Ohio 45202 | Richmond, Virginia 23219-4030 |
| (513) 629-2799 | (804) 775-4363 |

**MEMORANDUM IN SUPPORT**

I. **Introduction**

This case stems from International Paper's sale of the Hamilton "B" Street Mill in Hamilton Ohio to Smart Papers, LLC ("SMART"). Plaintiffs were employed by International Paper at the Mill at the time of the sale and were represented by the United Paperworkers International Union ("PACE") and the United Paperworkers International Union Local 1967 ("PACE Local 1967") (collectively, "the Union"). International Paper negotiated an Effects Bargaining Agreement with PACE, which provided severance pay on a specified formula based on years of service and hourly rate for anyone not offered employment with SMART.

Plaintiffs were not offered employment with SMART. As a result, Plaintiffs each received severance under the terms of the Effects Bargaining Agreement.

On July 23, 2001, Plaintiffs filed a twelve count complaint against PACE, PACE Local 1967, International Paper and SMART ("Defendants"). Defendants moved to dismiss the Complaint. On March 26, 2003, the Court granted in part each Defendant's Motion to Dismiss.

The only remaining claim against International Paper is Count VI, in which Plaintiffs allege that they were discriminated against on the basis of age with respect to the severance they received from International Paper. The undisputed facts establish that this claim is without merit.

II. **Statement of Undisputed Facts**

A. Background

Plaintiffs are former employees of International Paper at the Hamilton "B" Street Mill that International Paper acquired from Champion International in 2000. The hourly employees at the Mill (including Plaintiffs) were represented by the United Paperworkers International Union ("PACE") and the United Paperworkers International Union Local 1967 ("PACE Local 1967")

2

(collectively, "the Union"). International Paper and the Union were parties to a collective bargaining agreement. That agreement did not contain any applicable provisions regarding severance. (See March 26, 2003 Order, p. 14).

In January 2001, International Paper sold the "B Street" Mill in Hamilton, Ohio to Smart Papers LLC. ("SMART").

B.   Effects Bargaining Agreement

Prior to the sale, International Paper negotiated an Effects Bargaining Agreement ("EBA") with PACE. The EBA provided severance pay for hourly employees who completed the application process but were not hired by SMART. Specifically, the EBA provided in relevant part as follows:

> As a result of the sale of the Hamilton B Street Mill to SMART Papers, LLC, International Paper proposes the following benefits to the PACE International Union and its affiliate Local 1967.
>
> The following proposal is contingent upon timely ratification of this package by January 31, 2001.
>
> SEVERANCE
>
> Employees who do not receive an employment offer from SMART Papers will be paid 60 hours pay at the rate of their current permanent classification (not red circle rates) on the date of sale for each full and pro-rata year of continuous service with International Paper. Payments will be made as a lump sum within 30 days following date of sale and this payment will be subject to all applicable taxes.
>
> Employees who do receive an employment offer from SMART Papers will not be entitled to severance pay unless they are terminated from SMART Papers, through no fault of their own, within eighteen (18), months of the sale date.
>
> To be eligible for severance pay, an employee must be actively at work on the date of sale. Employees on disability or other approved leaves must be released to return to work in their former classifications.

3

> The Union agrees that Severance Program 817, or any other Severance Program, does not apply, and that this severance agreement is the only severance agreement applicable to the employees of the Hamilton B Street Facility.

(see March 26, 2003 Order, p. 5; Payton Aff. ¶4, Attachment A).

### C. Payment of Severance

The sale of the Mill was finalized on February 9, 2001. (Payton Aff. ¶3). The employees who applied for employment with Smart but were not hired were entitled to severance under the terms of the Effects Bargaining Agreement. This included all but four of the Plaintiffs. Those four Plaintiffs were not entitled to severance under the express terms of the EBA: Plaintiffs Dorman Angel and Donald Shupp were actually hired by Smart, Plaintiff Charles Hardix did not apply for employment with Smart, and Plaintiff Kenneth Bauer was out on long term disability and thus not entitled to severance benefits under the EBA.[1]

International Paper paid severance to all employees entitled to severance under the Effects Bargaining Agreement. (Payton Aff. ¶6).[2] Payments were made pursuant to the formula set forth in the Effects Bargaining Agreement – they were not based on age.

### III. ARGUMENT

#### A. Summary Judgment Standard

The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 328 (1986). Parties who bear the burden of proof on a crucial issue at trial cannot survive summary judgment without sufficient evidence to sustain their burden of proof on that

---

[1] Plaintiff Kenneth Bauer continues to receive payments under International Paper's Long Term Disability plan.
[2] Plaintiffs have not made any claim that the benefits were not properly calculated under the terms of the EBA.

4

point. See id. They must provide "significant probative evidence tending to support the complaint" or provide "specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). "Accordingly, hearsay evidence may not be considered on a motion for summary judgment." Hartsel v. Keys, 87 F.3d 795, 799 (6th Cir. 1996) (citation omitted).

Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. A "nonmoving party is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Gregg v. Allen-Bradley Co., 801 F.2d 859, 861 (6th Cir. 1986) (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289-90 (1968) and Schultz v. Newsweek, Inc., 668 F.2d 911, 918-19 (6th Cir. 1982)). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The undisputed material facts demonstrate that International Paper is entitled to summary judgment on all of Plaintiffs' claims.

**B.    Summary Judgment is Appropriate on Plaintiffs' Age Discrimination Claim**

In Count VI of Plaintiffs' Second Amended Complaint, Plaintiffs allege as follows:

> The acts of IP, International Union and Local 1967 in executing the [EBA] had the effect of adversely impacting the Plaintiffs' severance benefits and other benefits contained in the agreement because of their age. The execution and administration of this [EBA] attached as Exhibit C disproportionately reduced the benefits due the Plaintiffs because of their age.

(Plaintiffs' Second Amended Complaint).

The language of Count VI appears to compare the severance benefits available under the EBA with benefits available under different severance agreements. However, in its March 27,

5

2003 Order, the Court ruled that Plaintiffs were only entitled to severance benefits, "if at all, under the terms of the EB[A]." Thus, Plaintiffs' claim that "executing the EBA had the effect of adversely impacting Plaintiffs' severance benefits" is illusory because Plaintiffs would not be entitled to any benefits, if the EBA was not executed. (See March 26, 2003 Order, p. 14). Similarly, Plaintiffs' claim that the EBA disproportionately reduced the benefits due the Plaintiffs is meaningless as there can be no disproportionate reduction of benefits as the EBA is the only plan under which Plaintiffs would be entitled to benefits.

That leaves only an apparent argument that younger employees were recipients of higher severance pay, under the EBA, than older employees, and therefore older employees suffered a "disparate impact" in the form of reduced severance benefits. This claim is ludicrous. In fact, the evidence that has been repeatedly presented to Plaintiffs demonstrates that the opposite is true. Under the EBA, older employees received more severance on average than younger employees.

        1.    **Plaintiff Offered No Evidence That the EBA Caused A Disparate Impact On Older Workers.**

Assuming *arguendo* that the disparate impact theory applies to age discrimination claims, in general, and to this case, in particular, the law nevertheless does not allow for Plaintiffs to prevail on this claim.[3] Plaintiffs have not produced evidence demonstrating that the EBA had a disparate impact on older workers.

Plaintiffs do not and cannot present evidence sufficient to support a finding that the EBA caused a disparate impact on older employees. In fact, the exact opposite is true. A simple

---

[3] Although the Sixth Circuit stated in Abbott v. Federal Forge, Inc., 912 F.2d 867, 872 (6th Cir.1990), that a disparate-impact theory of age discrimination may be possible, the Court has subsequently noted that in light of the Supreme Court's decision in Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993), there is now "considerable doubt as to whether a claim of age discrimination may exist under a disparate-impact theory." Lyon v. Ohio Educ. Ass'n & Professional Staff Union, 53 F.3d 135, 139 n. 5 (6th Cir.1995).

6

statistical analysis demonstrates that older employees (who had more years of service on average) received <u>more</u> severance than their younger co-workers (who, not surprisingly, had fewer years of service on average).

| Age as of 2/9/01 | Average Years of Service | Average Severance |
|---|---|---|
| 60-65 | 33.54 | $38,969 |
| 55-60 | 32.34 | $37,858 |
| 50-55 | 29.87 | $35,483 |
| 45-50 | 25.71 | $29,072 |
| 40-45 | 17.59 | $19,888 |
| Under 40 | 10.42 | $11,087 |

(Payton Aff. ¶6, Attachment B.).

Indeed, comparing those employees over 40 who received severance with those under the age of 40, is even more telling:

| Age as of 2/9/01 | Average Years of Service | Average Severance |
|---|---|---|
| Over 40 | 27.70 | $32,137 |
| Under 40 | 10.42 | $11,087 |

(Payton Aff. ¶6, Attachment B.).

Simply put, the EBA did not have a disparate impact on older employees. Plaintiffs are utterly unable to demonstrate that the EBA results in actual, documented, tangible adverse impact on older employees. As one court aptly explained, no claim can be grounded on the disparate impact theory "without proof that the questioned policy or practice has had a disproportionate impact on the employer's workforce". <u>EEOC v. Greyhound Lines, Inc.</u>, 635

7

F.2d 188, 192 (3d Cir. 1980). That conclusion "should be as obvious as it is tautological: there can be no disparate impact unless there is a disparate impact." Id.

Because Plaintiffs do not and cannot offer proof of an adverse impact – and because there is no evidence whatsoever in the record to support a claim of disparate impact – this Court should dismiss Plaintiffs' age discrimination claim against International Paper.

### 2. Undisputed evidence is that payment of severance was not based on age – it was based on formula set forth in Effects Bargaining Agreement

As set forth above, the amount of severance paid to each employee not hired by Smart was determined by the language of the EBA. (Payton Aff. ¶6). This language clearly did not have any relationship to age. As the Supreme Court stated in Hazen Paper Co. v. Biggins, 507 U.S. 604, 612 (1993):

> On average, an older employee has had more years in the work force than a younger employee, and thus may well have accumulated more years of service with a particular employer. Yet an employee's age is analytically distinct from his years of service. An employee who is younger than 40, and therefore outside the class of older workers as defined by the ADEA, see 29 U.S.C. § 631(a), may have worked for a particular employer his entire career, while an older worker may have been newly hired. Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily "age based."

Id.; see also Lyon v. Ohio Education Assoc. and Professional Staff Union, 53 F.3d 135, 138 (6th Cir. 1996).

The instant case is illustrative. The EBA states that employees not hired by the buyer would receive "60 hours pay at the rate of their current permanent classification (not red circle rates) on the date of sale for each full and pro-rata year of continuous service with International Paper." Actual application of this language to the affected employees demonstrates the

8

nondiscriminatory basis of the EBA. For example, Plaintiff Kyle Taylor, who was born in 1954 and hired on July 10, 1972, was earning $17.11 per hour at the time of the sale and received $29,366 in severance. However, Plaintiff Dale Lentz, who was also born in 1954 but was hired on August 24, 1998 and earning $14.76 per hour at the time of the sale, received only $2,183 in severance. Clearly, Plaintiffs' years of service, not age, were indicative of the amount of severance each Plaintiff would receive.[4] (Payton Aff. ¶6, Attachment B.).

As shown above, pursuant to the terms of the EBA, employees under 40 years old at the time of the sale of the Hamilton B Street Mill, who were not hired by Smart Papers, received an average of $11,087 in severance payments from International Paper. The amount progressively increases as employees get older and employees between ages 60 and 65 at the time of the sale received $38,969 in severance from International Paper. Plaintiffs claims of age discrimination must be dismissed.

**IV.    Conclusion**

International Paper therefore asks that Plaintiffs' claims be dismissed, with prejudice, and that International Paper be awarded its costs and attorneys' fees.

Respectfully submitted,

INTERNATIONAL PAPER COMPANY


/s Michael A. Roberts_____
Counsel

| | |
|---|---|
| Michael Roberts, Esq. | W. Carter Younger, Esq. (admitted *pro hac vice)* |
| Graydon Head & Ritchey, LLP | McGuireWoods LLP |
| 1900 5th 3rd Center | One James Center |
| 511 Walnut Street | 901 East Cary Street |

---

[4] Significantly, according to the recent Supreme Court decision in General Dynamics Land System, Inc. v. Cline, 124 S. Ct. 1236, No. 02-1080 (February 24, 2004), the ADEA does not bar employers from favoring older workers over younger ones.

9

| | |
|---|---|
| Cincinnati, Ohio 45202 | Richmond, Virginia 23219-4030 |
| (513) 629-2799 | (804) 775-4363 |
| (513) 651-3836 | |
| email:mroberts@graydon.com | |

CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing has been electronically filed and a copy has been mailed, postage prepaid, this 20th day of September 2004 to: Mark J. Byrne, Esq., JACOBS, KLEINMAN, SEIBEL & MCNALLY, 2200 Kroger Building, 1014 Vine Street, Cincinnati, OH 45202; James B. Robinson, 2500 Kroger Building, 1014 Vine Street, Cincinnati, OH 45202; Robert I. Doggett 215 East Ninth Street, Sixth Floor, Cincinnati, Ohio 45202; and Stanley F. Lechner, MORGAN, LEWIS & BOCKIUS, 1111 Pennsylvania Avenue, NW Washington, DC 20004.

                                            /s Michael A. Roberts_____