UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DORMAN ANGEL, et al. | : | Case No. C-1-01 467 |
| | | (BECKWITH, JUDGE) |
| Plaintiffs | : | |
| vs. | : | MOTION OF DEFENDANT |
| | | PACE LOCAL 5-1967 |
| PACE LOCAL 5-1967, and | : | FOR SUMMARY JUDGMENT |
| PAPER, ALLIED INDUSTRIAL, | | |
| CHEMICAL & ENERGY WORKERS | | |
| INTERNATIONAL UNION, | : | |
| AFL-CIO, and | | |
| | | |
| INTERNATIONAL PAPER COMPANY | | |
| and | : | |
| | | |
| SMART PAPER, LLC | : | |
| Defendants | | |

Now comes Defendant PACE Local 5-1967 pursuant to Rule 56(b), FRCP and moves for summary judgment dismissing Plaintiffs' complaint against it.  There is no genuine issue of material fact and Defendant PACE Local 5-1967 is entitled to judgment as a matter of law.  This motion is supported by the attached memorandum.

/s/Robert I. Doggett
Robert I. Doggett (0016849)
Trial Attorney for Defendant
PACE Local 5-1967
6740 Clough Pike, Room 200
Cincinnati, Ohio  45244
Tel: 513/241-6116
Home office tel. 513-233-0915
FAX: 513-241-3825

TABLE OF CONTENTS

| | PAGE |
|---|---|
| MOTION FOR SUMMARY JUDGMENT | 1 |
| TABLE OF CONTENTS | 2 |
| MEMORANDUM SUPPORTING MOTION FOR SUMMARY JUDGMENT | 4 |
| STATEMENT OF CASE | 4 |
| STATEMENT OF UNDISPUTED FACTS | 4 |
|    1. The only provision for severance pay was the EBP. | 4 |
|    2. No membership vote was had on the EBP | 6 |
|    3. Plaintiffs' failure to exhaust internal remedies | 6 |
| ARGUMENT | 7 |
|    1. The Unions breached no duty of fair representation | 7 |
|    2. No membership vote was required on the Effects Bargaining Package | 8 |
|    3. Plaintiffs' failure to exhaust remedies | 11 |
|    4. Plaintiffs' state court claims of discrimination | 12 |
| CONCLUSION | 12 |
| CERTIFICATE OF SERVICE | 13 |

TABLE OF CASES

| | |
|---|---|
| Adcox v. Teledyne, Inc., 21 F.3d 1381 (6th Cir. 1994) | 7 |
| Airline Pilots v. O'Neill, 499 US 65, 136 LRRM 2721 (1991) | 8 |
| Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210, 124 LRRM 2494 (6th Cir. 1987) | 10 |
| Argentine v. Steelworkers, 23 F. Supp.2d 808 (SD Ohio 1998) | 9 |
| DelCostello v. Teamsters, 462 U.S. 151, 113 LRRM 2737 (1983) | 7 |
| In re General Motors Corp., 3 F.3d 980 (6th Cir. 1993) | 10 |

TABLE OF CASES (Continued)

PAGE

Kaiser v. U S Postal Service, 908 F.2d 47,
134 LRRM 2773 (6th Cir. 1990) ........................... 11

Retail Clerks v. Lion Dry Goods, Inc.,
369 U.S. 17, 49 LRRM 2670 (1962)...................... 10

Ryan v. General Motors Corp., 888 F.2d 1392,
136 LRRM 2995 (6th Cir. 1989) ........................ 11

White v. White Rose Food, 237 F.3d 174,
166 LRRM 2281 (2nd Cir. 2001)......................... 10

TABLE OF STATUTES

29 USC §158(a)(5) & (d)................................. 6

29 USC §185 (LMRA §301)..........................passim

MEMORANDUM SUPPORTING MOTION OF DEFENDANT PACE LOCAL 5-1967
FOR SUMMARY JUDGMENT

STATEMENT OF CASE

Plaintiffs claim that Defendant International Paper Company (herein called IP) breached a contract and that PACE IU and PACE Local 5-1967 (herein called the Unions) breached a duty of fair representation by negotiating an Effects Bargaining Package (herein called the EBP) on January 23, 2001. This was part of IP's discontinuance of operations at the Hamilton Mill. (See EBP, Bray 2nd depo. Exhibit 3). Plaintiffs also claim that the Unions breached the PACE Constitution and Local Bylaws by not having a membership vote on the EBP at the membership meetings January 26, 2001. In its decision of March 27, 2003, the Court dismissed Plaintiffs' §301/DFR claims and claims of the new Plaintiffs (pp. 24, 40), but as to the Unions denied dismissal of Count I (no vote on EBP) and discrimination claims in Counts VI and IX.

After the Court's decision on Defendants' motions to dismiss, challenging the allegations of Plaintiffs' Second Amended Complaint, new dispositive and documented facts have been developed through discovery, especially Severance Policy #817, reviewed in this Memorandum, now showing that the Unions are entitled to summary judgment as a matter of law.

STATEMENT OF UNDISPUTED FACTS

1. <u>The only provision for severance pay was the EBP.</u> Plaintiffs' claim in Count II for severance pay from the 1990 and 1993 CBA's, were dismissed by the Court (pp. 17,40), because the

4

1993 CBA (Exhibit B, attached to Plaintiffs' 2nd amended complaint, herein called "complaint") promised no severance pay. The 1996 Mill Reconfiguration Agreement provided in part:

> "Part V. <u>Summary Plan Description</u>, Attached hereto as Exhibit IV and incorporated herein by reference is an ERISA Summary Plan Description Document for Plan #817." (1996 agreement, Bray 2nd depo., Exhibit 1, page 5)

The Summary Plan Description for Plan #817 made part of the 1996 contract provided in <u>Section 9 Amendment and Termination</u>:

> "The Company reserves the right **to amend or terminate** the Policy at any time." (Severance Policy #817, page 5 Bray 2nd depo., Exhibit 2).

Champion/IP thus had the contractual right under Policy #817 **to amend or terminate** its 1996 contract severance pay provisions **at any time**, and without need for union agreement. IP exercised this right in the EBP which provided in ¶4:

> "The Union agrees that Severance Program #817, or any other Severance Program, does not apply and that this severance agreement is the only severance agreement applicable to the employees of the Hamilton B Street Facility." (Bray 2nd depo., Exhibit 3, page one).

IP's prudent exercise of its unilateral right to terminate or amend Policy #817 left no doubt that it was not liable to pay severance pay to all of its more than 600 employees terminated February 9, 2001, only those who met the requirements of the EBP. None of the Plaintiffs in this case are now entitled to severance pay under the EBP's requirements that an IP employee must apply for a job with Smart and be refused or if hired be terminated without his fault within 18 months. Why, then, did IP bargain with the Unions for the severance pay per the EBP agreement if IP

5

could amend Policy #817 without union agreement?  There were two reasons.

First, under NLRA law, 29 USC §158(a)(5) & (d), IP had a mandatory duty to bargain with the Unions over the effects of its closing.  Second, IP still had to have the Unions agree to settle outstanding grievances, which they did. (See EBP, Bray 2nd depo. Exhibits 3 and 4, listing 200 grievances settled).

  2. <u>No membership vote was had on the EBP</u>.

No membership vote was taken on the EBP when it was explained to the union membership in two meetings on January 26, 2001.  Within his authority to interpret the PACE IU Constitution PACE IU Vice President Gerald Johnston had advised IU Rep. Ken Stanifer that the EBP was not a CBA, but a settlement of complaints, a dispute, and grievances, therefore no vote was required, and none taken. (Stanifer and Johnston depositions).

  3. <u>Plaintiffs' failure to exhaust internal remedies</u>.  The fact that none of the Plaintiffs filed a grievance claiming severance pay within the ten days required may be moot now as the Court indicated, noting ¶¶ 8.01 <u>et seq</u> in the 1990 CBA. (Decision p. 29). We should add a new fact, that Severance Policy #817, had a separate Claims and Appeal procedure in §§ 11 <u>Claims Procedure</u>, 11.2, <u>Appeal</u>, 11.3 <u>Limitation Period</u>, and 13.4 <u>Other rights</u>, which provides: "[S]uch an Employee can file suit in state or federal court "if a claim for benefits is finally denied in whole or in part)." (Bray 2nd depo. Ex. 2, pp. 6-7, 9).  None of the Plaintiffs complied with this ERISA plan procedure.

6

ARGUMENT

1. <u>The Unions breached no duty of fair representation</u>.

The Court has already dismissed Plaintiffs' hybrid §301/DFR claims in Counts II and V on the main ground that IP breached no contract (Decision pp. 17, 30 & 40), now made even clearer by proof of IP's right under Policy #817 to terminate the 1996 severance pay at any time and without union agreement. No Plaintiff (except the two who were paid) met the EBP's conditions providing severance pay for IP hourly employees who applied for a job with, but were not offered a job by Smart Papers.

As a new fact now, the 1996 agreement and its Policy #817 provided: "The Company reserves the right **to amend or terminate** the Policy at any time." (Policy #817, Section 9, Bray 2nd depo., Exhibit 2 page 5). IP exercised that right in the EBP. But IP did need the Unions' agreement to settle 200 outstanding grievances. As a lesser reason IP did not breach the 1996 contract, Policy #817 limited severance pay for involuntary terminations to those resulting from the mill reconfiguration which was completed in early 1997. (Bray 2nd depo.) We note the authority of <u>Del Costello v. Teamsters</u>, 462 U.S. 151, 113 LRRM 2737 (1983), that a plaintiff must prove both employer breach of contract and union breach of its DFR, or fail in his claim. The clear showing now that IP breached no contract is a far stronger reason to again dismiss Plaintiffs' 301/DFR claims than that the Court lacked jurisdiction to hold a contact invalid per <u>Adcox v. Teledyne, Inc.</u>, 21 F.3d 1381, 146 LRRM 2288 (6th Cir. 1994).

While Plaintiffs' §301/DFR claim against the Unions fails because IP breached no contract for their severance pay, their DFR case against the Unions also fails because the Unions' action negotiating the EBP agreement with IP was not irrational. See Airline Pilots v. O'Neill, 499 US 65, 136 LRRM 2721 (1991).

2. <u>No membership vote was required on the EBP</u>. IP had exercised its reserved right per 1996 Policy #817, Section 9, to amend or terminate its severance pay provisions as stated in the EBP. **IP only needed union agreement on the settlement of 200 outstanding grievances,** which agreement took two weeks to complete. (See Bray 2nd depo. pp. 14-16, and Exhibits 3 and 4, exhibit 4 listing over 200 grievances settled). Plaintiffs claim denial of a right to a vote on the EBP under LMRA §301, 29 USC § 185. Their claim under 29 USC §§411 and 412 has been dismissed. (Decision, pp. 26, 40). Now as new facts shown, the EBP was essentially the settlement of complaints, a dispute and now the main element of the EBP, settlement of 200 grievances. (See EBP, pp. 4 and 5, Ex. 3 Bray 2nd depo., and see Exhibit 4, 2nd Bray). The PACE International Constitution did not require a membership vote on settlement of grievances, providing:

> "The International Union or Local Union, as the case may be, acting as the exclusive collective bargaining representative of the members, is irrevocably authorized and empowered by each member to present, negotiate and settle any and all grievances, complaints and disputes arising out of the relationship of a member and his or her employer." (PACE International Union Constitution, ARTICLE XVI, Section 3, pages 50-51. (2d Am. Complaint, Exhibit E, pp. 50-51).

8

The EBP did not provide a CBA's employees' ongoing future wages, hours and working conditions as the 1990, 1993 and 1996 CBA's did. It terminated IP's relationship with the Unions and the employees. With IP having the right to amend or terminate the 1996 severance pay provisions of Policy #817, per Section 9, the main contractual element in the EBP was settlement of 200 outstanding grievances. This should now make it clear that the EBP was not a "collective bargaining agreement" to which PACE Constitution Article XVI, Section 1 would apply. If as suggested this interpretation would render the PACE Constitution provision for a vote on a CBA nugatory, an interpretation that all labor agreements are CBA's would render nugatory PACE Constitution ARTICLE XVI, Section 3, providing that the Unions are empowered to present, negotiate and settle any and all grievances, complaints and disputes with an employer.

Plaintiffs claim that the Local Bylaws required a membership vote. (See Bylaws, 2d amended complaint, Exhibit D). The Union has interpreted its bylaws referring to "agreements" as meaning collective bargaining agreements. (Bray 1st deposition). But this claim is moot because the PACE IU Constitution further provides in Article VII, Section 5:

> "In the event of a conflict between bylaws of a Local Union and this Constitution, the Constitution shall be controlling." (Pltfs' Complaint, Exhibit E, page 23).

A local bylaw requiring a membership vote on the EBP is contrary to the PACE IU Constitution, ARTICLE XVI, Section 3, and void under PACE IU Constitution ARTICLE VII, Section 5. And this

9

court lacks jurisdiction to find breach of a local bylaws because it is a not a contract **between** labor organizations per §301 but rather is a contract between the local union and its members. See this Court's decision in <u>Argentine v. Steelworkers</u>, 23 F. Supp. 2d 808, 159 LRRM 2621 (SD Ohio 1998).

In <u>Apponi v. Sunshine Biscuits, Inc.</u>, 809 F.2d 1210, 124 LRRM 2494 (6th Cir. 1987), the Sixth Circuit held that a §301 pension agreement was a separate labor management contract, not part of a CBA, hence no exhaustion of grievance procedure was required. See <u>In re General Motors Corp.</u>, 3 F.3d 980 (6th Cir. 1993), where the Sixth Circuit held that an Employee Assistance Plan was a §301 contract, but not a CBA, stating:

> "The term 'contract' as used in Section 301 of the LMRA is not limited to collective bargaining agreements but can embrace understandings other than usually understood as collective bargaining agreements. <u>Stevens v. Employer - Teamsters ...Pension Fund</u>, 979 F.2d 444, 457 (6th Cir. 1992, <u>Apponi v. Sunshine Biscuits, Inc.</u>, 809 F.2d 1210, 1215 (6th Cir. 1987).

We had noted the original case, <u>Retail Clerks v. Lion Dry Goods, Inc.</u>, 369 U.S. 17, 49 LRRM 2670 (1962). The non-CBA nature of labor agreements like the EBP has now been made explicit as in <u>In re General Motors Corp.</u>, 3 F.3d 980.  See also <u>White v. White Rose Food</u>, 237 F.3d 174, 166 LRRM 2281 (2nd Cir. 2001), the Second Circuit found no breach of a union's DFR when it did not submit an amendment to a plant closing agreement to membership vote.

The EBP was prepared by IP, not the Unions, which did not interpret the EBP reference to union ratification to mean a

10

membership vote. (Bray 2d depo. p. 17).  Ambiguity favors he who did not draft. But if the EBP were construed to call for a membership vote not held, that could only inure to the benefit of IP, not to the Plaintiffs.  But IP honored the EBP.  Plaintiffs sustained no damage from "no vote."  They got jobs with Smart.

3. <u>Plaintiffs' failure to exhaust remedies</u>.  Probably a moot point in view of the Court's earlier decision, we note that none of these Plaintiffs filed a grievance claiming severance under the 1996 contract or complied with the claims procedure in ERISA Policy #817, §§ 11 <u>Claims Procedure</u>, 11.2, <u>Appeal</u>, and 11.3 <u>Limitation Period</u>, and 13.4, <u>Other rights</u>. (Bray 2nd depo. Ex. 2, pp. 6-7, 9). For these two separate failures, their claims fail.

In <u>Kaiser v. U S Postal Service</u>, 908 F.2d 47, (6th Cir. 1990), the Sixth Circuit stated:

> "To establish that a union breached its duty of fair representation, the employee must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress.... It is axiomatic that an aggrieved employee must exhaust any exclusive grievance and arbitration procedure created in a collective bargaining agreement prior to bringing a suit against the employer."

In <u>Ryan v. General Motors Corp.</u>, 888 F.2d 1392, 136 LRRM 2995 (6th Cir. 1989), the Sixth Circuit held against a plaintiff on the main ground of failure to exhaust his remedies, stating:

> "[E]xhaustion of grievance procedures is mandatory, unless resort to union appeal procedures is demonstrated to be futile....; <u>Clayton v. International Union, UAW</u>, 451 U.S. 679 (107 LRRM 2385) (1981); <u>Monroe v. International Union, UAW</u>, 723 F.2d 22, 24-25 (115 LRRM 2475 (6th Cir. 1983).  In <u>Monroe</u>, we discussed the factors for determining whether exhaustion would be futile.... hostility on the part of

>    union officials, whether such appeals procedures would be
>    adequate either to 'reactivate' the grievance or to award
>    the 'full relief' sought if the procedures were followed.
> Ryan v. General Motors Corp., 888 F.2d 1392, 136 LRRM 2995.

While it may have been was evident to union officers that IP breached no contract for severance pay, it would be paradoxical to hold this made filing a grievance futile. Union officials were not hostile to plaintiffs and any grievance would be considered for something the union officers may have missed.

    5. <u>Plaintiffs' state court claims of discrimination</u>. Plaintiff Kenneth Bauer (Bower) has been and is drawing long term disability from IP since he was 48 years old. At $8400.00 per year he will have received about $150,000.00 to age 65, substantially in excess of any severance pay by which he would lose his LTD. (Bray 2nd depo. pp. 20-21). For one disabled from working, continuing compensation was assured because the LTD plan was not terminated. (See Bray 2nd Ibid) We are told he will not press his claim in this case. Plaintiffs have abandoned their age discrimination claims after IP and Smart presented data showing no age discrimination. (See IP motion for summary judgment.

CONCLUSION

    IP had the right to amend the 1996 agreement's provisions for severance pay, per Policy #817, Section 9. IP did however need the Union's agreement to settle all outstanding grievance which it secured. The was no IP breach of contract or of union DFR. No membership vote was required on the EBP, but if it were

found to be required, Plaintiffs sustained no damage from no vote, i.e. **damnum absque injuria**. In fact, they got jobs with Smart and thus benefitted from the EBP. For the reasons stated, PACE Local 5-1967 is entitled to summary judgment against Plaintiffs.

                                        <u>/s/Robert I. Doggett</u>
                                        Robert I. Doggett (0016849)
                                        Trial Attorney for Defendant
                                        PACE Local 5-1967
                                        6740 Clough Pike, Room 200
                                        Cincinnati, Ohio  45244
                                        Tel: 513/241-6116

CERTIFICATE OF SERVICE

    The undersigned certifies that he served copies of the above document by the Clerk's CM/ECF system upon Mark J. Byrne, attorney for Plaintiffs, 2300 Kroger Building, 1014 Vine Street, Cincinnati, Ohio 45202, upon Grant S. Cowan, Frost Brown Todd, LLC, 2200 PNC Tower, 201 East Fifth Street Cincinnati, Ohio 45202-4182, upon Vincent J. Miraglia, Esq. International Paper Company Legal Department, 6400 Poplar Avenue, Memphis, TN 38197; upon James B. Robinson, attorney for PACE International Union, 2520 Kroger Building, 1014 Vine Street, Cincinnati, Ohio 45202; upon Charles E. Groppe, Morgan, Lewis & Bockius, LLP, 1111 Pennsylvania Avenue, NW, Washington, D.C. 20004, and upon Robert J. Hollingsworth, Cors & Bassett, LCC, 537 East Pete Rose Way, Suite 400, Cincinnati, Ohio 45202, attorneys for defendant Smart Papers, LLC.

                              /Robert_I._Doggett_____
                              Robert I. Doggett (0016849)
                              Trial Attorney for PACE Local 5-1967