## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **DORMAN ANGEL** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION NO. C-1-01-467** |
| | ) | |
| **v.** | ) | **JUDGE: BECKWITH** |
| | ) | |
| **UNITED PAPERWORKERS** | ) | |
| **INTERNATIONAL UNION (PACE)** | ) | |
| **LOCAL 1967,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANT SMART PAPERS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendant Smart Papers, LLC, hereby

moves for summary judgment on Plaintiffs' remaining claims under the Ohio Civil Rights Act,

Ohio Revised Code Sections 4112.02(J) and 4112.02(A).  For the reasons set forth in the

accompanying Memorandum of Law in Support of its Motion for Summary Judgment, Smart

Papers respectfully submits that there are no genuine issues of material fact in dispute and that

judgment should be entered in its favor as a matter of law.


Date: March 2, 2005

                                        Respectfully submitted,

                                        /s/Robert J. Hollingsworth
                                        Stanley F. Lechner
                                        Margery Sinder Friedman
                                        Charles P. Groppe
                                        Of Counsel
                                        MORGAN, LEWIS & BOCKIUS,
                                        1111 Pennsylvania Avenue
                                        Washington, DC  20004
                                        Telephone:  202.739.3000
                                        Facsimile:   202.739.3001

and

Robert J. Hollingsworth (0024559)
CORS & BASSETT, LLC
537 East Pete Rose Way
Suite 400
Cincinnati, Ohio 45202
Telephone: 513.852.8200
Facsimile: 513.852.8222

Counsel for Defendant Smart Papers

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| DORMAN ANGEL *et al.*, ) | |
| ) | |
| Plaintiffs, ) | **CIVIL ACTION NO. C-1-01-467** |
| ) | |
| v. ) | **JUDGE: BECKWITH** |
| ) | |
| UNITED PAPERWORKERS ) | |
| INTERNATIONAL UNION (PACE) ) | |
| LOCAL 1967, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT SMART PAPERS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Stanley F. Lechner
Margery Sinder Friedman
Charles P. Groppe
Of Counsel
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue
Washington, DC 20004
Telephone: 202.739.3000
Facsimile: 202.739.3001

Robert J. Hollingsworth
CORS & BASSETT, LLC
537 East Pete Rose Way
Suite 400
Cincinnati, Ohio 45202
Telephone: 513.852-8200
Facsimile: 513.852.8222

Dated: March 2, 2005

1-WA/2299072.1

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION .............................................................................................................. 1

PRIOR HISTORY ............................................................................................................. 4

STATEMENT OF UNDISPUTED FACTS ...................................................................... 6

STANDARD FOR SUMMARY JUDGMENT................................................................... 9

SUMMARY OF ARGUMENT ......................................................................................... 10

I.     PLAINTIFFS' CLAIM THAT SMART PAPERS AIDED AND ABETTED IP AND
       THE DEFENDANT UNIONS IN AGE DISCRIMINATION MUST BE DISMISSED
       BECAUSE PLAINTIFFS ADMIT THEY HAVE NO EVIDENCE OF ANY SUCH
       DISCRIMINATORY CONDUCT. ............................................................................. 11

II.    PLAINTIFF CAMPBELL'S CLAIM OF AGE DISCRIMINATION IS BARRED
       UNDER THE DOCTRINE OF RES JUDICATA............................................................ 13

III.   THE AGE DISCRIMINATION CLAIMS BROUGHT BY THE THREE PLAINTIFFS
       WHO WERE OFFERED EMPLOYMENT WITH SMART PAPERS ARE WHOLLY
       WITHOUT EVIDENTIARY SUPPORT. ...................................................................... 14

IV.    PLAINTIFFS' CLAIM OF DISABILITY DISCRIMINATION AND BREACH OF
       CONTRACT ALLEGES NO CLAIM AGAINST SMART PAPERS. ........................... 18

CONCLUSION................................................................................................................... 20

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

<u>Anderson v. Liberty Lobby, Inc.,</u>
    477 U.S. 242 (1986)......................................................... ............................................. 13

<u>Barnhart v. Pickerel, Schaeffer & Eberling Co.,</u>
    12 F.3d 1382 (6th Cir. 2003) ....................................................................................... 20

<u>Black v. Columbus Pub. Schools,</u>
    124 F. Supp. 2d 550 (S.D. Ohio 2000) ....................................................................... 13

<u>Black v. Ryder/P.I.E. Nationwide, Inc.,</u>
    15 F.3d 573 (6th Cir. 1994) ......................................................................................... 16

<u>Campbell, et al. v. International Paper Co., et al.,</u>
    Case No. 1:01-CV-527 (S.D. Ohio May 12, 2004), appeal pending,
    Case No. 04-3797 (6th Cir. filed June 18, 2004)................................................. *passim*

<u>Celotex Corp. v. Catrett,</u>
    477 U.S. 317 (1986)...................................................................................................... 12

<u>Creech v. Ohio Casualty Ins. Corp.,</u>
    944 F. Supp. 1347 (S.D. Ohio 1996) ........................................................................... 13

<u>Gatch v. Milacron, Inc.,</u>
    111 Fed. Appx. 785 (6th Cir. 2004)............................................................................. 20

<u>Kane v. Magna Mixer Co.,</u>
    71 F. 3d 555 (6th Cir. 1995) ........................................................................................ 17

<u>Monette v. EDS Corp.,</u>
    90 F.3d 1173 (6th Cir. 1996) ....................................................................................... 23

<u>Pacific Employers Ins. Co. v. Sav-a-Lot of Winchester,</u>
    291 F.3d 392 (6th Cir 2002) ........................................................................................ 16

<u>Policastro v. Northwest Airline, Inc.,</u>
    297 F.3d 535 (6th Cir. 2002) ....................................................................................... 16

<u>Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,</u>
    973 F.2d 474 (6th Cir. 1992) ....................................................................................... 17

# TABLE OF AUTHORITIES (cont.)

**CASES (cont.)**                                                                 **PAGE**

Westwood Chemical Co. v. Kulick,
    56 F.2d 1224 (6th Cir. 1981) ............................................................................. 18

Wexler v. White's Fine Furniture, Inc.,
    317 F.3d 564 (6th Cir. 2003) ............................................................................. 13

Yates v. Avco Corp.,
    819 F.2d 630 (6th Cir. 1987) ............................................................................. 18


**STATUTES and MISCELLANEOUS**

Ohio Civil Rights Act,
    Ohio Revised Code Sections 4112.02(A), (J) .......................................... *passim*

Federal Rule of Civil Procedure 56 ................................................................... 1

Local Rule 7.2................................................................................................... 1

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **DORMAN ANGEL** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION NO. C-1-01-467** |
| | ) | |
| **v.** | ) | **JUDGE: BECKWITH** |
| | ) | |
| **UNITED PAPERWORKERS** | ) | |
| **INTERNATIONAL UNION (PACE)** | ) | |
| **LOCAL 1967,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## DEFENDANT SMART PAPERS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Smart Papers, LLC ("Smart Papers"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Local Rule 7.2, submits this Memorandum of Law in support of its Motion for Summary Judgment as to Plaintiffs' Count VII, alleging a violation of Ohio Revised Code Section 4112.02(J), and Counts IX, XI and XIII, alleging violations of Ohio Revised Code Section 4112.02(A).

## INTRODUCTION

This case marks the second occasion that this Court has been asked to address alleged claims of age discrimination arising from Smart Papers' initial hiring decisions after it purchased the Hamilton B Street Paper Mill (the "Mill") in Hamilton, Ohio from International Paper ("IP") during February 2001. In Campbell, *et al.* v. International Paper Co., *et al.*, Case No. 1:01-CV-527 (S.D. Ohio May 12, 2004), appeal pending, Case No. 04-3797 (6th Cir. filed June 18, 2004) (attached as Smart Papers Exhibit ("SP Exh.") 1), the Court held that Smart Papers did not discriminate against approximately 72 former hourly employees of IP on the basis of age during

the hiring process. 64 of those former employees did not receive job offers from Smart Papers, and 8 received offers but not for the jobs they later said they wanted. Smart Papers based its hiring decisions in large part on references given to Smart Papers by the applicants' former supervisors and managers at IP as well as on recommendations about each applicant provided to Smart Papers by a professional consulting firm, the Weissman Group. In rejecting the age discrimination claims in <u>Campbell</u>, the Court found that Smart Papers' hiring decisions "*did not screen out older applicants from employment*" but in fact demonstrated "*that Smart Papers treated younger and older applicants equally with respect to employment opportunities at the Mill.*" SP Exh. 1 at 32 (emphasis added). Accordingly, this Court granted Smart Papers' motion for summary judgment and dismissed in their entirety the age discrimination claims raised in the <u>Campbell</u> case. <u>Id.</u> at 42.

This case involves 115 Plaintiffs who were subject to the same hiring process at issue in <u>Campbell</u>. Unlike the plaintiffs in <u>Campbell</u>, however, the vast majority of Plaintiffs here received: (1) positive references from IP; (2) recommendations for employment from the Weissman Group; and (3) offers of employment from Smart Papers when it acquired the Mill.[1/] Nonetheless, the Plaintiffs here claim that Smart Papers somehow discriminated against them on the basis of age because, by offering them employment, they subsequently were denied severance from IP in accordance with the terms of an effects bargaining agreement that IP – and not Smart Papers – negotiated with the United Paperworkers International Union and the United Paperworkers International Union, Local 1967 (collectively, "Defendant Unions"). It is

---

[1/]    As discussed more fully below, Count XI of the Second Complaint asserts an individual claim by one Plaintiff who did not receive a job offer from Smart Papers. In addition, Count X, which the Court previously dismissed, and Count IX assert claims on behalf of 4 Plaintiffs who did not even apply for a position with Smart Papers. For purposes of this Motion, Smart Papers will accept as true Plaintiffs' assertions in the Second Amended Complaint that the remaining 110 Plaintiffs did receive job offers from Smart Papers at the time Smart Papers acquired the Mill.

incredible that a voluntary offer and acceptance of employment could be the basis of a cause of action, providing yet another example of the old adage, "no good deed goes unpunished."

These claims against Smart Papers are frivolous and not supported by any evidence whatsoever. Among other things, this Court has already held that Smart Papers' hiring process was devoid of age discrimination. See Campbell, SP Exh. 1. In addition, the Plaintiffs in this case have recently acknowledged to this Court that they "have no evidence at this point in time of any age discrimination by IP as it relates to the complaint that now exists." See Plaintiffs' Memorandum in Response to the Court's Show Cause Order, at 2 (Case Docket Entry No. 87 filed November 22, 2004.) Moreover, this Court previously already has determined that Smart Papers' offer of employment to applicants when it purchased the Mill (which rendered applicants ineligible for severance from IP) "is hardly the basis for a claim of age discrimination against Smart Papers." Campbell, SP Exh. 1 at 38.

The other isolated claims against Smart Papers are equally meritless. The remaining Plaintiff in this case who did not receive a job offer from Smart Papers (Charles Campbell) previously was a plaintiff in the Campbell litigation. He already has litigated and lost his age discrimination claim against the Company, and his action is barred by the doctrine of *res judicata*. In addition, three Plaintiffs – Joseph Born, Jimmy Taylor, and Michael Thomas – allege that Smart Papers constructively discharged them by offering them positions at a lower rate of pay than they had received from IP. It is undisputed, however, that Smart Papers eliminated the positions they previously held with IP when it reorganized the Mill's operations. Nonetheless, because they had received positive references in the application process, Smart Papers made them jobs offers because it needed qualified employees at the Mill's start-up. As this Court noted in a similar context in Campbell, "[i]t just makes no sense that an organization

in need of workers would make sham job offers . . . when it was in the process of hiring a workforce largely composed of older workers." SP Exh. 1 at 41. Moreover, because these three Plaintiffs were not satisfied with their job offers, they entered into agreements with Smart Papers to have their job offers rescinded, thus allowing them to receive severance from IP, the very thing that the vast majority of the Plaintiffs in this case claim was denied them on the basis of their age.[2/]

In short, the Plaintiffs in this case cannot credibly maintain that the employment decisions made by Smart Papers when it acquired the Mill in any way were motivated by age discrimination. Accordingly, Smart Papers submits that the remaining claims should be dismissed as a matter of law.

## PRIOR HISTORY

The 115 plaintiffs in this case filed their Second Amended Complaint on January 8, 2002, asserting various claims against Smart Papers, IP, and the Defendant Unions, which are the United Paperworkers International Union and the United Paperworkers International Union, Local 1967. See Plaintiffs' Second Amended Complaint (Case Docket No. 34). In a decision dated March 27, 2003, this Court granted in part Defendants' various motions to dismiss, dismissing with prejudice Plaintiffs' claims under Section 301 of the Labor Management Relations Act (Counts I, II, III, V), their claims under 29 U.S.C. § 411(a)(1) (Count IV), their breach of contract claim (Count VIII), their breach of the collective bargaining agreement claim (Count X), and their state law fraud claim (Count XII). See Amended Order dated March 27, 2003 (Case Docket No. 67).

---

[2/]    One last Plaintiff has asserted a claim of disability discrimination in the case. Although the claim does not appear directed at Smart Papers, this claim too has little merit, for the individual at issue never applied for a position with Smart Papers and thus fails to make out even a prima facie case of discrimination based on his alleged

While discovery in the case was still progressing, Defendant IP on September 24, 2004 filed a motion for summary judgment on the remaining claims asserted against it. See Case Docket No. 77. After Plaintiffs did not respond to IP's motion, this Court on November 3, 2004 issued an order requiring Plaintiffs to show cause for the denial of IP's motion. See Case Docket No. 85. Plaintiffs subsequently filed a response to the Court' Order on November 22, 2004 in which they acknowledged that they had "no evidence at this point in time of any age discrimination by IP as it relates to the complaint that now exists." See Plaintiffs' Memorandum in Response to the Court's Show Cause Order at 2 (Case Docket No. 87). Plaintiffs therefore withdrew their claim for age discrimination with prejudice against IP under Count VI. Id. at p. 2. In addition, Plaintiffs requested that the Court not issue a ruling against IP on Count IX for disability discrimination because Plaintiffs represented that they were engaged in settlement discussions with IP at the time of their filing. Id.

By this Motion, Smart Papers is now moving for summary judgment on the remaining claims in this case, namely Count VII (aiding and abetting the alleged discriminatory acts outlined in Count VI, which Plaintiffs have dismissed with prejudice), Count IX (alleged disability discrimination on behalf of one plaintiff who never applied for a job with Smart Papers), Count XI (alleged age discrimination by Plaintiff Charles Campbell, who previously litigated and lost the exact claim in the prior Campbell case), and Count XIII (alleged constructive discharge claims on behalf of three individuals who requested that Smart Papers rescind their offers of employment in order for them to receive severance from IP).

---

disability. In any event, Plaintiffs have requested that this claim be held in abeyance pending settlement discussions between Plaintiffs and IP. Accordingly, it too should be dismissed with respect to Smart Papers.

## STATEMENT OF UNDISPUTED FACTS

The history surrounding Smart Papers' purchase of the Mill from IP in February 2001, including details of Smart Papers' non-discriminatory hiring process used to staff the Mill, was addressed extensively by this Court in the Campbell litigation. As such, below Smart Papers highlights only the key facts from that history that affect the present dispute.

Champion International Corporation ("Champion") opened the Mill in 1894 and operated it continuously until 2000 when IP acquired Champion's assets. Campbell, SP Exh. 1 at 5. Although once profitable, economic changes to the paper industry hurt the Mill's fortunes, resulting in operating losses in excess of $1 million a month at the time IP acquired Champion. After only seven months of ownership, IP subsequently agreed to sell the Mill to Smart Papers, a new company formed solely for the purpose of acquiring and operating the Mill. Id. at 5-6.

To turn the Mill's financial performance around, Smart Papers recognized that it would have to reduce the size of the Mill's workforce by 25% and lower wages in some jobs by as much as 20%. Immediately prior to the sale of the Mill to Smart Papers, IP terminated all hourly and salaried employees working at the Mill. Smart Papers, as the new employer, then made offers of employment to former IP employee who applied for a position and were recommended for employment with Smart Papers. In making its hiring decisions, Smart Papers engaged the Weissman Group to conduct applicant interviews, check applicant references, and evaluate the applicants. In addition, the Weissman Group interviewed each applicant's former managers or supervisor at IP, who either recommended or did not recommend the applicant. The Weissman Group then rated the applicants either as a green candidate, a yellow candidate, or a red candidate, based on the data the Weissman Group had collected. Smart Papers subsequently extended offers to all applicants whom the Weissman Group rated as a green or yellow

candidate. Smart Papers then placed the applicants into particular positions that existed at the restructured Mill based on both the applicant's qualifications and experience, as well as the needs of Smart Papers at the Mill. Id. at 6-9.

In total, 568 applicants from IP ultimately applied for hourly positions at the Mill. Of these, 410 were offered employment with Smart Papers. 522 of the 568 applicants (or 91.9%) were age 40 or over. 379 of the 410 applicants actually hired by Smart Papers (or 92.4%) were age 40 or older. Id. at 9.

Applicants who did not receive a job offer from Smart Papers were eligible to receive severance from IP in accordance with an effects bargaining agreement that IP had negotiated with the Defendant Unions. It is undisputed that Smart Papers did not participate in the bargaining over this agreement, see SP Ex. 2 (Excerpts from Deposition of Kenneth Stanifer) at 134, and never discussed the negotiations or IP's relationship with the Defendant Unions prior to the sale of the Mill. See SP Exh. 3 (Excerpts from Deposition of Tom Stewart) at 63. Smart Papers had no obligation to provide any individual with severance under the terms of the effects bargaining agreement to which it is not a party. See SP Exh. 6, Plaintiff Joseph Born's Responses to Smart Papers' First Request for Admissions ("Response to Request for Admissions") Nos. 7-8; SP Exh. 7, Plaintiff Jimmy Taylor's Responses to Request for Admissions Nos. 7-8.

Plaintiff Charles Campbell is the lone Plaintiff in this case who has alleged that he applied but did not receive a job offer from Smart Papers. He subsequently became a plaintiff in the case styled Campbell, et al. v. International Paper Co., et al., Case No. 1:01-CV-527 (S.D. Ohio May 12, 2004). In its decision dated May 12, 2004, this Court found that Plaintiff Campbell had not been discriminated on the basis of age when Smart Papers did not offer him

employment at the Mill. SP Exh. 1 at 32-33. Plaintiff Campbell has brought the same claim for age discrimination in this lawsuit.

In addition, Plaintiffs Born, Taylor, and Thomas previously had worked as mobile equipment mechanics for IP. See SP Exhibit 6, Born Response to Request for Admissions No. 10; SP Exh. 7, Taylor Response to Request for Admissions No. 10; SP Exh. 4 (Excerpts from Deposition of Milton Lewis taken in PACE Local Union 5-1067, et al. v. IP, Case No. C-1-02-301 (S.D. Ohio)) at 31. As part of Smart Papers' reorganization of the Mill, Smart Papers eliminated this position and outsourced the job to a third-party contractor. SP Exh. 6, Born Response to Request for Admissions No. 14 (admitting that "when Smart Papers took over the Hamilton B Street Mill, it eliminated the position of mobile equipment [mechanic]"); SP Exh. 7, Taylor Response to Request for Admissions No. 14 (same); SP Exh. 4 at 31-32. As a result, the positions that these three Plaintiffs previously held at the Mill no longer existed when Smart Papers started operations, and Smart Papers did not hire any former IP employee to perform the mobile equipment mechanic job. See SP Exh. 6, Born Response to Request for Admissions Nos. 15-16 (admitting that "no other employees were hired by Smart Papers to perform the mobile equipment [mechanic] job you performed while employed by International Papers, and that Smart Papers contracted out that work"); SP Exh. 7, Taylor Response to Request for Admissions 15-16 (same). Nonetheless, based on the recommendations of the Weissman Group, Smart Papers initially extended these individuals offers of employment on or about February 9, 2001. Second Amended Complaint ¶¶ 106-107; SP Exh. 6, Born Response to Request for Admissions No. 17 (admitting that Smart Papers made an offer of employment); SP Exh. 7, Taylor Response to Request for Admissions No. 17 (same).

On February 13, 2001, however, these three individuals requested that Smart Papers rescind or otherwise terminate its offer of employment to them in order that they could receive severance from IP.  See SP Exh. 6, Born Response to Request for Admissions  No. 19 (admitting that Born "requested that Smart Papers rescind or otherwise terminate its offer of employment to you, in order to make you eligible for severance from IP"); SP Exh. 7, Taylor's Response to Request for Admissions No. 19 (same).  Representatives of Smart Papers subsequently met with these three individuals (as well as other affected mobile equipment mechanics who had been offered jobs with Smart Papers) to discuss their employment status.  SP Exh. 4 at 11-13.  As a result of that meeting, Plaintiffs Born, Taylor, and Thomas and Smart Papers mutually agreed that Smart Papers would rescind their offers of employment, thus allowing them to receive severance from IP. See SP Exh. 6, Born's Response to Request for Admissions Nos. 20-21 (admitting that "Smart Papers in fact rescinded its offer of employment" and that Born "received severance benefits" from IP); SP Exh. 7, Taylor's Response to Request for Admissions Nos. 20-21 (same); SP Exh. 4 at 11-13.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is an effective tool used "to secure the just, speedy and inexpensive determination of [an] action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  It is not "a disfavored procedural shortcut[.]"  Id.  "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and one on which that party will bear the burden of proof at trial."  Id. at 322.  In ruling on a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving party. Creech v. Ohio Casualty Ins. Corp., 944 F. Supp. 1347, 1352 (S.D. Ohio 1996)  But,

"[t]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Id.

Summary judgment should be granted "where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (citing Fed. R. Civ. P. 56(c)). A fact is considered material if, when applied to the substantive law, it affects the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party." Black v. Columbus Pub. Schools, 124 F. Supp. 2d 550, 561 (S.D. Ohio 2000).

## SUMMARY OF ARGUMENT

Smart Papers respectfully submits that Plaintiffs' remaining claims asserted against Smart Papers cannot withstand summary judgement. First, Plaintiffs' claim against Smart Papers (Count VII) under the Ohio Civil Rights Act, O.R.C. § 4112.02(J), should be dismissed because it is a claim for aiding and abetting allegedly discriminatory actions by IP and the Unions (Count VI). Plaintiffs have admitted that they have no evidence of any age discrimination supporting their underlying claim against IP and the Defendant Unions in Count VI and have requested that Count VI be dismissed with prejudice. In so doing, Plaintiffs effectively have rendered moot any allegation that Smart Papers aided and abetted what Plaintiffs themselves acknowledge was not age discriminatory conduct. Second, the age discrimination claim brought by Plaintiff Campbell should be dismissed under the doctrine of *res judicata* because Smart Papers was granted summary judgment on this claim in this Court's opinion in Campbell. See SP Exh. 1. Third, the constructive discharge and age discrimination

claims brought by Plaintiffs Born, Taylor, and Thomas should be dismissed because this Court dismissed substantially similar claims in <u>Campbell</u>, and, as in <u>Campbell</u>, these Plaintiffs have not alleged facts sufficient to maintain a claim for age discrimination. Finally, Plaintiff Bauer's disability discrimination claim (Count IX) should be dismissed against Smart Papers because Plaintiff Bauer did not apply for a position with Smart Papers and remains an employee of IP covered under IP's long-term disability insurance program.

**I.    PLAINTIFFS' CLAIM THAT SMART PAPERS AIDED AND ABETTED IP AND THE DEFENDANT UNIONS IN AGE DISCRIMINATION MUST BE DISMISSED BECAUSE PLAINTIFFS ADMIT THEY HAVE NO EVIDENCE OF ANY SUCH DISCRIMINATORY CONDUCT.**

In Count VII of the Second Amended Complaint, Plaintiffs allege that Smart Papers aided and abetted certain alleged discriminatory acts of IP and Defendant Unions with respect to the negotiation of the effects bargaining agreement governing the termination of IP's workforce at the Mill. Plaintiffs' claim against Smart Papers, however, turns on the validity of Count VI of the Second Amended Complaint, which alleges that IP and the Defendant Unions discriminated against Plaintiffs on the basis of age in violation of O.R.C. §§ 4112.02(A) and 4112.02(C) through the execution of the effects bargaining agreement itself. <u>See</u> Second Amended Complaint, ¶¶ 76, 77 (Case Docket No. 34). On November 22, 2004, however, Plaintiffs admitted that they have no evidence of any age discrimination "as it relates to the complaint that now exists." <u>See</u> Plaintiffs' Memorandum in Response to the Court's Show Cause Order at 2 (Case Docket No. 87). As a result, Plaintiffs have requested dismissal of Count VI with prejudice. It simply is absurd to suggest that Smart Papers aided and abetted conduct that Plaintiffs acknowledge was not age discriminatory. Accordingly, Smart Papers requests that Count VII be dismissed.

Moreover, the vast majority of Plaintiffs here each contend that the alleged discriminatory act at issue in this case is the fact that they received job offers from Smart Papers and thus lost the opportunity to receive severance from IP under the terms of the effects bargaining agreement between IP and the Defendant Unions.  Smart Papers did not negotiate the effects bargaining agreement and had no obligations under it to provide severance to any individual who previously worked for IP.  Instead, as this Court knows from the Campbell case, Smart Papers was engaged in the process of staffing and restructuring a previously unprofitable Mill in the hope of turning it into a going concern and, at a minimum, saving the jobs of those individuals – including the Plaintiffs here – who were extended offers of employment during February 2001.  In Campbell, the Court explicitly confronted one plaintiff out of the 72 plaintiffs in that case whose age discrimination claim turned on the fact that, because Smart Papers had offered him a job, he was ineligible for severance from IP.  See Campbell, SP Exh. 1 at 38.  The Court rejected the claim, recognizing that "[t]his complaint . . . is hardly the basis for a claim of age discrimination against Smart Papers."  Id.

Here, according to the Second Amended Complaint, 110 of the 115 Plaintiffs in this case raise the same "complaint" against Smart Papers.  These Plaintiffs have no evidence that Smart Papers discriminated against them on the basis of age by offering them jobs, and they have suffered no adverse employment action by Smart Papers.  See, e.g., Policastro v. Northwest Airline, Inc., 297 F.3d 535 (6th Cir. 2002) (denying plaintiff's claim of discrimination because she did not demonstrate that she suffered an adverse employment action).  In light of the above, Count VII cannot survive, and summary judgment should be granted to Smart Papers as a matter of law.

## II. PLAINTIFF CAMPBELL'S CLAIM OF AGE DISCRIMINATION IS BARRED UNDER THE DOCTRINE OF RES JUDICATA.

In Count XI of the Second Amended Complaint, Plaintiff Charles Campbell alleges that he was discriminated against on the basis of age when Smart Papers did not hire him for a position with the Company. Plaintiff Campbell, however, also was a plaintiff in the prior Campbell litigation and already has litigated and lost this claim against Smart Papers. Accordingly, Smart Papers requests that the Court dismiss this claim.

The doctrine of *res judicata* prohibits parties from relitigating a claim that was raised in a prior action in which there has been a final judgment on the merits. Pacific Employers Ins. Co. v. Sav-a-Lot of Winchester, 291 F.3d 392, 399 (6th Cir 2002). The doctrine "mandates that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties, with respect both to every matter that was actually litigated in the first case, as well as every recovery that might have been presented." Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 582 (6th Cir. 1994). "[R]es judicata has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." Kane v. Magna Mixer Co., 71 F. 3d 555, 560 (6th Cir. 1995).

Under these principles, Plaintiff Campbell's claim fails as a matter of law. First, his claim for age discrimination against Smart Papers under the Ohio Civil Rights Act was considered by this Court and dismissed on the merits on May 12, 2004. See Campbell at p. 33. Second, Plaintiff Campbell – though he presumably received severance from IP and thus is unlike the majority of Plaintiffs in this case – has joined with them in the present case and again brought his claim for age discrimination under the Ohio Civil Rights Act against Smart Papers.

See Exhibit A, ¶ 97. Third, this Court has been asked to decide the same issue of age discrimination which it already decided in Campbell – whether Smart Papers' decision not to hire Plaintiff Campbell was discriminatory based on his age. Fourth, there is an identity of the causes of action in this case. "Identity of the causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" Sanders Confectionery Products, Inc. v. Heller Financial, Inc., 973 F.2d 474, 484 (6th Cir. 1992) quoting Westwood Chemical Co. v. Kulick, 656 F.2d 1224, 1227 (6th Cir. 1981).

Plaintiff Campbell has brought two identical claims of age discrimination under the Ohio Civil Rights Act based on Smart Papers failure to hire him. The facts and evidence needed to prove the claim in Campbell and the present claim are identical. Thus, Plaintiff Campbell's claim is subject to res judicata. Accordingly, Smart Papers requests that the Court dismiss Count XI as a matter of law.

## III. THE AGE DISCRIMINATION CLAIMS BROUGHT BY THE THREE PLAINTIFFS WHO WERE OFFERED EMPLOYMENT WITH SMART PAPERS ARE WHOLLY WITHOUT EVIDENTIARY SUPPORT.

In Count XIII, Plaintiffs Born, Taylor, and Thomas each allege that they were constructively discharged because, when Smart Papers acquired the Mill, they were offered positions at a rate of pay lower than they had received from IP. Their discrimination claims, however, are substantially similar to claims which were brought and dismissed in the Campbell litigation. Furthermore, their claims ring especially hollow given the fact that these three Plaintiffs negotiated with Smart Papers to have their offers of employment rescinded so that they could receive severance from IP – the very relief the vast majority of Plaintiffs seek in this case. Accordingly, Smart Papers requests that Count XIII be dismissed as a matter of law.

First, regarding these Plaintiffs' claims that they were "constructively discharged," this Court previously held in Campbell that individuals offered employment by Smart Papers cannot

maintain a constructive discharge claim.  See Campbell, SP Exh. 1 at 33, n.13.  As the Court

noted, "[a] constructive discharge occurs when working conditions are so difficult or unpleasant

that a reasonable person in the plaintiff's shoes would have felt compelled to resign."  See id.,

citing Yates v. Avco Corp., 819 F.2d 630, 636-37 (6th Cir. 1987.  These Plaintiffs, however,

ultimately rejected the jobs that Smart Papers offered them in order to receive severance from IP.

Because "[o]ne cannot resign from a job if one has decided not to work for the employer in the

first instance," id., their constructive discharge claims fail as a matter of law.

        Moreover, it is undisputed that these three Plaintiffs previously had worked for IP as

mobile equipment mechanics.  SP Exh. 6, Born Response to Request for Admissions  No. 10; SP

Exh. 7, Taylor Response to Request for Admissions No. 10.  When Smart Papers began

operations, it eliminated these positions from the Mill and in fact did not hire any former IP

employee or any other individual to perform this job when it started operations, choosing instead

to save costs by contract this work out.  SP Exh. 6, Born Response to Request for Admissions

Nos. 14-16 (admitting that "when Smart Papers took over the Hamilton B Street Mill, it

eliminated the position of mobile equipment [mechanic]" and contracted the work out); SP Exh.

7, Taylor Response to Request for Admissions Nos. 14-16 (same).  Nonetheless, because these

Plaintiffs had applied for positions and had been recommended for employment by the

Weissman Group, Smart Papers initially extended them offers of employment.  SP Exh. 6, Born

Response to Request for Admissions  No. 17; SP Exh. 7, Taylor Response to Request for

Admissions No. 17.

        Although these three Plaintiffs  allege that Smart Papered hired younger employees for

higher paying jobs for which they claim they are qualified, it is undisputed that the specific jobs

they formally held at the Mill did not exist at Smart Papers.  As such, they cannot even establish

a *prima facie* case of discrimination, for they can point to no evidence that similarly situated younger mobile equipment mechanics received more favorable treatment or that Smart Papers singled them out for impermissible reasons. Indeed, all of the mobile equipment mechanics were treated the same, regardless of their age, and Plaintiffs can offer no evidence to the contrary. See Gatch v. Milacron, Inc., 111 Fed. Appx. 785, 790 (6th Cir. 2004) (finding that, in context of job elimination, plaintiff must present as part of her *prima facie* case evidence that similarly situated younger employees received more favorable treatment or evidence that the employer singled out the plaintiff for impermissible reasons) (attached as SP Exh. 5).

In addition, even if these three Plaintiffs could establish a *prima facie* case (which they cannot), they still cannot show that the real reason behind Smart Papers' placement decisions was age discrimination. Regardless of whether Plaintiffs can point to any isolated evidence that Smart Papers hired a substantially younger employee for a higher paying job that Plaintiffs now claim they were qualified to perform, it does not establish that Smart Papers' placement decisions were motivated by age discrimination. See Barnhart v. Pickerel, Schaeffer & Eberling Co., 12 F.3d 1382, 1395 (6th Cir. 2003) (proof of replacement by a person outside the protected class does not establish pretext). As this Court noted in Campbell when confronted with similar claims of age discrimination brought by eight plaintiffs who had been offered positions at the Mill,

> Nothing in the record suggest that age played a part in the placement decisions Smart Papers made . . . [G]iven that Smart Papers was endeavoring to hire an initial workforce for the Mill, Plaintiffs' theory that Smart Papers offered them jobs it knew they would not accept is implausible and attributes to Smart Papers a Machiavellian streak which is not evident on this record. It just makes no sense that an organization in need of workers would make sham job offers to these . . . applicants because of their age when it was in the process of hiring a workforce largely composed

of older workers. Therefore, no reasonable inference of
discrimination can be drawn from this argument.

Campbell, SP Ex. 1 at 41-42.

The Court's conclusions reached in Campbell apply with equal force here. These three

Plaintiffs can point to no evidence that Smart Papers discriminated against them on the basis of

age when it initially made offers of employment to them. Indeed, there are several reasons why

their claims are even more frivolous than the same claims already addressed by the Court in

Campbell:

- Smart Papers eliminated the positions that these individuals previously worked at the Mill
  when they were employed by IP. SP Exh. 6, Born Response to Request for Admissions
  No. 14 (admitting that "when Smart Papers took over the Hamilton B Street Mill, it
  eliminated the position of mobile equipment [mechanic]"); SP Exh. 7, Taylor Response
  to Request for Admissions No. 14 (same).

- In fact, Smart Papers hired no mobile equipment mechanics for a position at the Mill. SP
  Exh. 6, Born Response to Request for Admissions No. 16 (admitting that "no other
  employees were hired by Smart Papers to perform the mobile equipment [mechanic] job
  you performed while employed at International Paper, and that Smart Papers contracted
  out that work"); SP Exh. 7, Taylor Response to Request for Admissions No. 16 (same).

- Smart Papers, however, based on the recommendations of its outside consulting group,
  offered these individuals the opportunity to work at the Mill. SP Exh. 6, Born Response
  to Request for Admissions No. 17; SP Exh. 7, Taylor Response to Request for
  Admissions No. 17.

- These Plaintiffs ultimately declined Smart Papers' offer and requested that Smart Papers
  rescind or otherwise terminate its offer of employment so that they could receive
  severance from IP. SP Exh. 6, Born Response to Request for Admissions No. 19
  (admitting that Plaintiffs "requested that Smart Papers rescind or otherwise terminate its
  offer of employment . . . in order to make [them] eligible for severance from IP"); SP
  Exh. 7, Taylor Response to Request for Admissions No. 19 (same).

- Smart Papers accommodated their request, making them eligible for the IP severance
  package which they ultimately received. SP Exh. 6, Born Response to Request for
  Admissions No. 20; SP Exh. 7, Taylor Response to Request for Admissions No. 20.

  In short, these three Plaintiffs already negotiated and received the very remedy that the

vast majority of Plaintiffs in this case seek: the severance package offered by IP to its former

employees who did not receive a job offer from Smart Papers. In contrast, these three

individuals, even though their jobs were eliminated, were offered the opportunity to work at

Smart Papers in another capacity. Rather than accept that offer, they negotiated to have the offer

rescinded so that they could benefit under IP's effects bargaining agreement and receive

severance. It is simply absurd to suggest that, while Smart Papers allegedly "aided and abetted"

some age-based scheme to deprive most of the Plaintiffs from receiving severance from IP by

offering them jobs, Smart Papers allegedly discriminated against these three Plaintiffs on the

basis of age by offering them sham employment, then rescinding those offers at their request so

that they could ultimately receive severance from IP.

Accordingly, Smart Papers respectfully requests that Count XIII be dismissed as a matter

of law.

## IV.    PLAINTIFFS' CLAIM OF DISABILITY DISCRIMINATION AND BREACH OF CONTRACT ALLEGES NO CLAIM AGAINST SMART PAPERS.

Finally, in Count IX of the Second Amended Complaint, Plaintiff Bauer asserts that

"Defendants" discriminated against him on the basis of his alleged disability and breached some

alleged contract with respect to certain payments he alleges he is due under the effects

bargaining agreement between IP and the Defendant Unions. From the Second Amended

Complaint, it is not clear whether this claim even alleges any wrongdoing on behalf Smart

Papers. To the extent it does, however, Smart Papers requests that the claim be dismissed.

Count IX states that Plaintiff Bauer was an IP employee on disability leave when the

effects bargaining agreement was executed. See Second Amended Complaint ¶ 86 (Case Docket

No. 34). Plaintiff Bauer alleges that, in violation of O.R.C. § 4112.02(A), he was never informed

of the date of the sale or that he had to be actively at work in order to receive severance. Id. at

¶87. Further, Plaintiff Bauer claims that the failure to pay him severance was a breach of

contract in violation of 28 U.S.C. §185 and a violation of some unspecified fiduciary law. <u>Id.</u> at ¶ 88.

Plaintiff Bauer has alleged no claims specifically against Smart Papers and, in fact, never applied for employment at Smart Papers or had any other employment relationship with Smart Papers. As such, he cannot even establish a *prima facie* case of discrimination against Smart Papers because he can point to no adverse employment decision made by the Company affecting his employment. <u>See</u> <u>Monette v. EDS Corp.</u>, 90 F.3d 1173, 1178-86 (6th Cir. 1996) (noting that one element of a *prima facie* case is evidence that employee suffered some adverse employment decision).

Further, Plaintiffs have represented to this Court that they are engaged in settlement talks with IP regarding this claim. <u>See</u> Memorandum in Response to Court' Show Cause Order at 2 (Case Docket No. 87). From all appearances, Plaintiff Bauer appears to have remained an employee of IP because he is covered under IP's long-term disability insurance. In any event, Plaintiffs have requested that the Court "hold off any ruling relating to Count IX" <u>with respect to IP</u> pending completion of the parties' settlement discussions. Smart Papers is not involved in these discussions and has had no employment relationship with Plaintiff Bauer that would give rise to any claim of discrimination. Accordingly, Smart Papers requests that the Court dismiss Count IX as to Smart Papers as a matter of law.

## CONCLUSION

For all the reasons set forth above, Smart Papers respectfully asks the Court to

grant its Motion for Summary Judgment in its entirety.


Date: March 2, 2005

Respectfully submitted,


/s/Robert J. Hollingsworth_____
Stanley F. Lechner
Margery Sinder Friedman
Charles P. Groppe
Of Counsel
MORGAN, LEWIS & BOCKIUS,
1111 Pennsylvania Avenue
Washington, DC  20004
Telephone:  202.739.3000
Facsimile:  202.739.3001

and

Robert J. Hollingsworth (0024559)
CORS & BASSETT, LLC
537 East Pete Rose Way
Suite 400
Cincinnati, Ohio 45202
Telephone: 513.852.8200
Facsimile:  513.852.8222

Counsel for Defendant Smart Papers

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 2, 2005, a true and correct copy of Defendant Smart Papers' Motion for Summary Judgment and Memorandum in Support was sent electronically via the Court's ECF system and by U.S. Mail, postage pre-paid, upon:

**Counsel for Plaintiffs:**
Mark J. Byrne, Esq.
Jacobs, Kleinman, Seibel & McNally
2300 Kroger Building
1014 Vine Street
Cincinnati, Ohio 45202

**Counsel for Defendant International Paper Company:**
W. Carter Younger, Esq.
McGuireWoods LLP
1050 Connecticut Avenue, NW
Suite 1200
Washington, DC 20036-5317

Vincent Miraglia
International Paper Co.
Legal Department
6400 Poplar Avenue
Memphis TN 38197

and

Grant S. Cowan
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202-4182

**Counsel for Defendant PACE Local 5-1967:**
Robert I. Doggett, Esq.
6740 Clough Pike, Room 200
Cincinnati, Ohio 45244

1-WA/2299072.2

**Counsel for Defendant PACE International Union:**
James B. Robinson, Esq.
Kircher, Robinson & Welch
2520 Kroger Building
1014 Vine Street
Cincinnati, Ohio 45202


/s/Robert J. Hollingsworth_____
Robert J. Hollingsworth