Moreover, the import of Plaintiffs' own evidence eludes them. Plaintiffs take pains to point out that the average age of the hourly employees at the Mill was 49.1 while under International Paper's ownership and that the average age of applicants not hired by Smart Papers was 49.0. See Plaint. Ex. 59. What Plaintiffs apparently fail to recognize is that if the average age of the hourly workers under International Paper was 49 and the average age of the applicants rejected was 49, then the average age of applicants actually hired must have been 49 as well.[6] In other words, Smart Papers' hiring procedures, even if they did grade each applicant on flexibility and willingness to learn, did not discriminatorily impact older workers.

In addition, while we are addressing the statistical data, Plaintiffs point out that the average age of the hourly workers under International Paper was 49 and that the average age of the new applicants hired by Smart Papers was 38.1. Plaintiffs also argue that after buying the Mill from International Paper, Smart Papers eliminated 148 workers in the protected class while adding 42 workers under age 40. See Doc. No. 114, at 39-40. Plaintiffs contend that this evidence shows that Smart Papers

---

[6]    There were 575 hourly employees under International Paper and 568 applicants for hourly positions with Smart Papers. See Plaint. Ex. 59; Maheu Aff. ¶ 11. Thus, because the sample group remained essentially the same size, the average age of the applicants hired by Smart Papers had to remain substantially the same.

acted to substantially reduce the number of older workers at the
Mill.  In actuality, this evidence carries little if any
probative weight.  Simply comparing the average age of the hourly
workers under International Paper to the average age of Smart
Papers' new hires proves nothing because, quite simply,
International Paper and Smart Papers are two different employers.
Furthermore, because Smart Papers planned to reduce the total
number of hourly workers when it took over the Mill, and because
the composition of the hourly workforce was predominately workers
over age 40, more employees within the protected class would
naturally lose their jobs as a consequence.  But, as the evidence
has shown, the workforce reduction was not unfairly directed at
older workers because the average age of the persons hired was
the same as the average age of the applicants rejected.

Moreover, pointing out that the average age of new
hires was 38.1 shows very little because, as Smart Papers
observes, there is no information about the average age of the
total applicant pool.[7]  Furthermore, the raw numbers themselves
do not indicate why the total number of older workers was
reduced.  Again, however, Plaintiffs own evidence demonstrates
that Smart Papers did not embark on a course to rid itself of

---

[7]    According to Smart Papers, while it hired 195 new
employees, i.e., persons who did not previously work for
International Paper, between February 9, 2001 and April 26, 2002,
it actually received over 800 new applications.  Doc. No. 124,
Ex. 1, Hampton Aff. ¶ 5.

24

older workers. Plaintiffs' Exhibit 73 is a list of employees who terminated employment from Smart Papers in the approximate one period year after Smart Papers bought the Mill. This exhibit shows that 123 employees left Smart Papers' employ between February 9, 2001 and April 26, 2002. Of these employees, 67 (54.47%) were age 40 or over. In other words, terminations were distributed fairly equally between workers inside and outside of the protected class. Looking further into these numbers, Exhibit 73 reflects that of the 67 terminations in the plus-40 group, 54 (81%) of the employees terminated employment for presumably voluntary reasons,[8] whereas 13 members (19%) of the plus-40 group were terminated through direct employer action.[9] Exhibit 73 further reflects that in the under-40 group who terminated employment during this period, 44 employees (79%) left employment for presumably voluntary reasons and 12 employees (21%) were terminated through direct company action. These figures show that Smart Papers actively terminated as many employees outside of the protected class as it did within the protected class. These numbers clearly do not demonstrate a bias against older

---

[8]    On the exhibit, this group of employees has the following notations regarding the reason for termination: no reason given, retirement, at will, another job, dissatisfied, personal reason, transfer to new file #, resigned, agreement, no word, walked off job.

[9]    On the exhibit, this group of employees has the following notations regarding the reason for termination: layoff, performance, position eliminated, absenteeism, discharged, insubordination.

25

workers. Finally, the Court further notes that the average age
of the plus-40 group of employees who terminated employment was
49.8 years, which one would expect given that the average age of
the workforce when Smart Papers bought the Mill was 49. That
figure further reflects, however, that Smart Papers did not
disproportionately eliminate employees at the high end of the age
group.

    Plaintiffs also attempt to find pretext in the fact
that of the 195 new employees Smart Papers hired between February
9, 2001 and April 26, 2002, 113 were under age 40 and the average
age of the new hires was 38.1. This approximately 60/40 split
between age groups, however, would not appear to be the kind of
gross disparity indicative of discriminatory hiring practices,
Hazelwood Sch. Dist. v. United States, 433 U.S. 299, 308 (1977),
particularly in the absence of data concerning the demographics
of the relevant applicant pool. Compare with Browning v. Rohm &
Haas Co., No. 98-6186, 1999 WL 1000884, at **4 (6th Cir. Oct. 29,
1999)(indicating that the fact that only 12.50% of new hires were
in the protected group in a two year period and only 17.28% of
new hires were in the protected group in a four year period not
evidence of age discrimination). The Court notes further that
the average age of the plus-40 group of applicants Smart Papers
did hire was 46.69 years, only slightly below the average age of
the entire hourly workforce at the time Smart Papers began

26

operating the Mill.  This figure indicates that there was not a
bias towards hiring substantially younger employees within the
protected age group.  Taking into consideration the full impact
of all the terminations and all of the new hires from February
10, 2001 to April 26, 2002, the average age of the entire hourly
workforce dropped only slightly from 49 to 46.44.  The average
age of the hourly employees following these adjustments still
resulted in a population that was not substantially younger than
the average age of the Plaintiffs.  Again, contrary to
Plaintiffs' contention, these figures do not indicate a concerted
effort on the part of Smart Papers to create a younger workforce.

Plaintiffs also claim that the reasons proffered by
Smart Papers are pretexts for discrimination because Smart Papers
collected age data on applicants for no legitimate reason.  This
argument is not supported by the facts or the law, however.  EEOC
regulations require employers to maintain date of birth records
on their employees.  29 C.F.R. § 1627.3 (2004).  Moreover, the
mere maintenance and development of age information, absent
direct evidence that it was used in making adverse employment
decisions, does not raise even a circumstantial inference of
discrimination.  <u>Wilson v. Firestone Tire & Rubber Co.</u>, 932 F.2d
510, 514 (6th Cir. 1991); <u>Bowman v. Firestone Tire & Rubber Co.</u>,
724 F. Supp. 493, 506 (N.D.Ohio 1989).  There is no direct
evidence in this record that Smart Papers or The Weissman Group

collected any age data for the purpose of assisting in making hiring decisions. Indeed, Mary Rita Weissman testified without contradiction that she did not request nor did she use any age data in making her hiring recommendations. Weissman Dep. at 51.

Plaintiffs contend that pretext is demonstrated because Smart Papers did not conduct employment reference checks on the applicants it hired after February 9, 2001, although it did conduct employment reference checks on all applicants from International Paper Company. This fact, however, raises no inference of age discrimination in the context of this case. Smart Papers uniformly applied an age-neutral set of criteria to all former International Paper employee-applicants. It uniformly applied a different, but also age-neutral, set of criteria to all of the so-called "off-the street" applicants.[10] The statistics just discussed indicate that Smart Papers' hiring practices, both before and after the change in criteria, did not disproportionately eliminate older employees from employment. Moreover, as Smart Papers argues, it had a legitimate reason for dropping the employment reference check for off-the-street applicants. International Paper was a ready source of information regarding the likely performance of applicants from

---

[10] In fact the record shows that the only difference in the hiring process for off-the-street applicants was that Smart Papers dropped the employment reference check. Otherwise, the applicants were judged according to the same criteria as International Paper applicants. Carpenter Dep. at 11-17.

28

the Mill which was not available for the off-the-street
applicants.  The decision not to conduct employment reference
checks for off-the-street applicants was not so unreasonable or
ridden with error that Smart Papers could not have honestly made
it.  Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 576-77
(6th Cir. 2003); Koval v. Dow Jones & Co., 86 Fed. Appx. 61, 70
n.10 (6th Cir. 2004).  Therefore, Smart Papers' decision not to
conduct employment reference checks for off-the-street applicants
does not create an issue of fact regarding pretext in the context
of this case.

          Finally, Plaintiffs argue that pretext is shown
because, despite their substantial collective years of experience
working at the Mill, Smart Papers preferred to hire 113 younger
applicants with little or no experience in the paper industry.
See Plaint. Ex. 60.  In other words, Plaintiffs argue, pretext is
shown because Smart Papers hired many substantially younger
employees who were objectively less qualified than them.  This
argument would carry some force if in fact simple years of
experience in the paper industry was the primary qualification
for employment with Smart Papers.  Compare with Carberry v.
Monarch Marking Sys., Inc., 30 Fed. Appx. 389, 393-94 (6th Cir.
2002)(pretext shown where plaintiff established that he was
objectively more qualified than candidate selected according to
employer's documented evaluative criteria).  In fact, as

29

indicated above, Smart Papers considered a variety of factors in its evaluation of both former International Paper employees and off-the-street applicants. Thus, Smart Papers' apparent decision not to assign controlling weight to the applicant's experience within the paper industry is not evidence of pretext.

Plaintiffs' argument also rests on the mistaken notion that mere longevity is a proxy for an employee's worth to an organization. See Sutherland v. Michigan Dept. of Treas., 344 F.3d 603, 617 (6th Cir. 2003)(pretext not shown; plaintiff's greater work experience did not make him more qualified than candidate selected by employer). In fact, from sampling the evaluations of Plaintiffs' performance at the Mill provided by International Paper,[11] a reasonable conclusion to be drawn is that Plaintiffs' experience is an empty credential, even when compared to applicants with little or no experience in the paper industry.[12]

---

[11]    The Court observes that Plaintiffs have adopted a safety in numbers approach in which they compare their own collective years of experience at the Mill to the off-the-street applicants' relative inexperience in order to argue that they are more objectively qualified than the off-the-street applicants. Therefore, the Court believes it is fair to assess Plaintiffs' collective performance at the Mill, as reported to Smart Papers by International Paper.

[12]    The Individual Plaintiffs' Appendix submitted by Smart Papers, with appropriate cites to the record, includes the following comments regarding Plaintiffs' performance: "Doesn't move fast enough to get hurt." (Ex. 1); "Does the minimum required." (Ex. 4); "Tries to get out of work." (Ex. 6); "Just enough productivity to stay employed." (Ex. 7); "Poor in all categories." (Ex. 9); "Poor quality of work." (Ex. 10); "Does

30

The Court is further compelled to observe that
Plaintiffs tell only half the story of their own evidence.  To be
sure, while Plaintiffs' Exhibit 60 shows that Smart Papers hired

---

minimum to keep his job." (Ex. 11); "Has some quality issues."
(Ex. 12); "Isn't great at productivity." (Ex. 13); "Average
quality." (Ex. 14); "He waits until others get started on work
and then just follows along." (Ex. 16); "Finds things to stop us
from speeding up." (Ex. 18); "Productivity is not there-slow
worker." (Ex. 19); "Not a self-starter." (Ex. 20); "May
intentionally slow the process so he doesn't have to work so
hard." (Ex. 21); "Productivity very poor." (Ex. 22); "Problems,
not dependable." (Ex. 23); "Do as little as he can to get by-
nothing extra." (Ex. 24); "Doesn't like the good workers because
they make him look bad." (Ex. 25); "Wastes time." (Ex. 26);
"Takes short cut and frequently makes errors." (Ex. 27); "No
matter what position he plays, it's low production." (Ex. 33);
"Not real productive." (Ex. 34); "Lack of effort." (Ex. 35);
"He's lazy-takes easy path." (Ex. 39); "Inconsistent-can be best
and can detract." (Ex. 40); "Dependability problems." (Ex. 41);
"Low quality." (Ex. 42); "Runs poor quality." (Ex. 45); "He is
capable but doesn't want to work." (Ex. 46); "Doesn't do things
on his own-no initiative." (Ex. 48); "Doesn't do job-poor
productivity." (Ex. 50); "Does as little as necessary to get by.
(Ex. 51); "Moves very slow." (Ex. 52); "Dependability-changes a
little then go back to old habits." (Ex. 54); "Fair worker-not
outstanding." (Ex. 55); "Not a good worker." (Ex. 58); "Below
average." (Ex. 61); "Poor productivity-poor attitude." (Ex. 63);
"Worst operator." (Ex. 64); "Lazy-rubs people wrong way." (Ex.
67); "Just enough to get by." (Ex. 68); "Fair productivity."
(Ex. 71); "Has knowledge; uses it to make it difficult not easy."
(Ex. 72).

Plaintiffs argue that the references from International
Paper are inaccurate and that they were in fact good employees.
Whether the references were accurate, however, is not relevant.
The question is whether Smart Papers could have reasonably relied
on them.  Smith v. Chrysler Corp., 155 F.3d 799, 807-08 (6th Cir.
1998).  Nothing in this record suggests that Smart Papers could
not have reasonably relied on these references.  Although the
hiring process was undoubtedly rushed, Smart Papers' process
resulted in applicants within the protected class being hired at
a higher rate than younger applicants.  To the extent that the
process was flawed, it did not unfairly eliminate older
applicants.  Thus, under the circumstances of this case, Smart
Papers' reliance on the references from International Paper was
reasonable.

31

many younger workers with little or no paper industry experience,
it also shows that of the 82 off-the-street applicants Smart
Papers hired from within the protected class, 43 (52%) also had
one year or less experience in the paper industry.  The Court
further notes that the average age of these employees is 47.48,
which is not substantially younger than the average age of the
Plaintiffs, which is 51.80.  In actuality, Exhibit 60 shows that
Smart Papers was not adverse to hiring older applicants with
little or no experience in the paper industry and that lack of
experience within the paper industry was not a disqualifying
factor for all age groups.

In short, none of the evidence proffered by Plaintiffs
leads to a reasonable inference that Smart Papers' reasons for
not hiring them, the poor references from International Papers
and The Weissman Group's recommendations, are but pretexts for
age discrimination.  This is particularly true in light of the
statistical data, which the Court has carefully analyzed, and
which shows that Smart Papers' hiring practices did not screen
out older applicants from employment at the Mill.  In fact, the
Court believes that the record conclusively demonstrates that
Smart Papers treated younger and older applicants equally with
respect to employment opportunities at the Mill.

Accordingly, Smart Papers' motion for summary judgment with respect to the claims of these Plaintiffs is well-taken and is **GRANTED**.

## C. The Remaining Plaintiffs

Remaining are the claims of eight Plaintiffs (Elmer Campbell, Alfred Holland, Govan Begley, Raymond Arthur, Floyd Geeding, Sonja Greene, William Rumpler, and Richard Hess) who contend that Smart Papers discriminated against them on the basis of age even though it actually offered them jobs at the Mill.[13]

Smart Papers offered Plaintiff Elmer Campbell (age 60) a position as a pulper finisher, the position he was occupying when International Paper sold the Mill. Campbell rejected this offer. Campbell wanted a position as either a beater engineer or an assistant beater engineer. The record establishes, however, that Smart Papers hired one beater engineer (age 59) and one

---

[13]    As noted, Plaintiffs continue to maintain that they were constructively discharged even though Smart Papers offered them jobs. This cannot be. A constructive discharge occurs when working conditions were so difficult or unpleasant that a reasonable person in the plaintiff's shoes would have felt compelled to resign. Yates v. Avco Corp., 819 F.2d 630, 636-37 (6th Cir. 1987). Some of these Plaintiffs rejected the jobs that Smart Papers offered to them; the other Plaintiffs actually accepted the offers from Smart Papers. One cannot resign from a job if one has decided not to work for the employer in the first instance. Conversely, if one has decided to work for an employer, then the conditions could not have been unbearably difficult or unpleasant to a reasonable person. As the Court has tried to explain before, these Plaintiffs are really complaining that Smart Papers did not offer them the jobs they wanted. Therefore, these Plaintiffs' claims are either failure to hire claims and/or disparate treatment claims and the Court will treat them as such.

33

assistant beater engineer (age 54) who were not substantially younger than Campbell as a matter of law.  Doc. No. 124, at 55. Smart Papers filled two other beater engineer positions with applicants (ages 52 and 53) who were only slight outside of the presumptively non-discriminatory age differential.  Id.  As Smart Papers correctly argues, the placement of applicants of substantially the same age as Campbell into the beater engineer positions he desired shows that age was not a factor in filling the these jobs.  Cf. Mereish v. Walker, 359 F.3d 330, 338 (4th Cir. 2004)(retention of twenty-one employees older than plaintiffs during reduction-in-force showed that employer not targeting positions staffed by older employees for elimination). Campbell has not adduced any evidence which suggests that Smart Papers denied him a position as a beater engineer or assistant beater engineer because of his age.  Consequently, granting summary judgment against Campbell on his age discrimination claims is appropriate.

There was no adverse employment action with respect to Plaintiff Raymond Arthur (age 62).  Smart Papers offered Arthur a position as a paper inspector rather than the raw material quality assurance tester position he held with International Paper.  Even though Smart Papers placed a younger employee in the position he held with International Paper, Arthur admitted that the job which he was offered paid more than his former position,

34

was not demeaning, was not more physically demanding than his old
job, and that his old job was not more desirable than the
position he was offered. Arthur Dep. at 21-33; Burlington Ind.
v. Ellerth, 524 U.S. 742, 761 (1998)("A tangible employment
action constitutes a significant change in employment status,
such as hiring, firing, failing to promote, reassignment with
significantly different responsibilities, or a decision causing a
significant change in benefits."). Arthur rejected the position
offered by Smart Papers because he subjectively believed that he
was not qualified to perform it. Id. at 54. There is no
evidence that Smart Papers would not have given Arthur training
adequate to allow him to perform this position. There is simply
nothing to suggest that age discrimination played a part in Smart
Papers' job offer to Arthur. Therefore, summary judgment against
Arthur on his age discrimination claims is appropriate.

Plaintiff Richard Hess (age 49) applied for a position
with Smart Papers as a machine tender, back tender or winder
operator. Smart Papers offered and Hess accepted a position as
an assistant winder operator. The assistant winder operator
position was actually a higher level position than the department
relief position Hess held with International Paper. Hess
eventually did receive a promotion to winder operator. Hess's
own deposition testimony establishes that Smart Papers filled the
three available machine tender operator positions with applicants

35

who were older than him.  Hess Dep. at 72.  Smart Papers also

filled the three available back tender positions with persons as

old or older than Hess.  Id. at 73.  Although one of the winder

operators hired by Smart Papers was younger than Hess (Dan

Steward, age 40), the remaining winder operators (Walter Bowling,

age 47, Les Feltner, age 49, Curtis Roberts 50) were older or not

substantially younger than Hess.  There is simply no evidence in

this record that Smart Papers' initial decision to place Hess as

an assistant winder operator was due to his age.  Accordingly,

summary judgment against Hess on his age discrimination claims is

appropriate.

Smart Papers offered Plaintiff Alfred Holland a

position as a drum operator at a rate of $17 per hour, which was

a higher wage than the embosser operator position he wanted.

Holland Dep. at 43-44; Holland Dep. Ex. 3.  Holland had been a

drum operator with International Papers for a number of years,

but rejected Smart Papers' offer because of the heat and stress

involved in working in the drums.  In his deposition, Holland

complained that Smart Papers gave younger employees his former,

lower paying position.  On balance, Holland did not suffer an

adverse employment action.  Although the drum operator position

was more physically demanding than the embosser operator

position, it was also a higher paying job.  See Kocsis v. Multi-

Care Management, Inc., 97 F.3d 876, 885-87 (6th Cir. 1996)

36

(plaintiff's reassignment to a new position at same or greater pay, with no other material changes in working conditions, not an adverse employment action); Mungin v. Katten, Muchin & Zavis, 116 F.3d 1549, 1556 (D.C.Cir. 1997)("[C]hanges in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes."). The fact that the drum operator position was more stressful did not make the offer to Holland an adverse action. See Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994) (reassignment to a different position without any reduction in title, salary, or benefits was not adverse employment action although new position involved different duties and was more stressful). Therefore, Holland has failed to establish a prime facie case of age discrimination. Accordingly, summary judgment against Holland on his age discrimination claims is appropriate.

Sonja Greene, age 49, cannot establish a prima facie case of age discrimination. Greene applied for a position as a finishing area clerk or a secretary. Smart Papers offered her a position as an assistant sheeter operator. However, the person who received the position Greene wanted, Nancy Etter, at age 46, was not substantially younger than Greene as a matter of law. Moreover, as Smart Papers indicates in their brief, within weeks of being hired, Greene was promoted to a higher paying clerical

37

position.  Greene Dep. at 42-55; Doc. No. 105, Ex. 4 ¶ 7.  In
addition, although Greene identified one younger sheeter operator
that Smart Papers hired, she also admitted that Smart Papers
hired at least three other sheeter operators who were older than
her or not substantially younger than her.  Greene Dep. at 73;
114-15; 144-45.  Clearly, Smart Papers did not use age as a
criteria to fill the sheeter operator positions.  Nothing in the
record suggests that Smart Papers discriminated against Greene
because of her age.  Accordingly, summary judgment against Greene
on her age discrimination claims is appropriate.

        Smart Papers offered Plaintiff William Rumpler (age 50)
a position as an assistant header operator.  Within four months
of being hired, Smart Papers promoted Rumpler to header operator.
As Smart Papers correctly argues, Rumpler's primary complaint
seems to be that because Smart Papers offered him a job, he was
ineligible to collect a severance package from International
Paper.  Rumpler Dep. at 57.  This complaint, however, is hardly
the basis for a claim of age discrimination against Smart Papers.
Furthermore, the record demonstrates that none of the four
persons Smart Papers hired into the position Rumpler wanted were
substantially younger than him as a matter of law.  See Doc. No.
105, Individual Plaintiffs Appendix, Ex. 60.  Therefore, Rumpler
has failed to establish a prima facie case of age discrimination.

38

Accordingly, summary judgment against Rumpler on his age discrimination claims is appropriate.

Although Floyd Geeding (age 55) held a position as a trainer with International Paper, Smart Papers offered him a position as a mixer operator. Geeding, however, rejected this offer because it involved shift work. Geeding Dep. at 55-56 Smart Papers states that it did not offer Geeding a training position because of negative comments from International Paper regarding his performance as a trainer. See id. Ex. 28. The record demonstrates that Smart Papers also placed two substantially younger former trainers, Fern Gadd (age 45) and Frances Spurlock (age 42) in hourly non-training positions as well. Id.; Geeding Dep. at 88-89. Therefore, Smart Papers did not treat Geeding worse than similarly-situated substantially younger employees. Thus, Geeding fails to make out a prima facie case of age discrimination. Furthermore, Geeding's own testimony establishes that Smart Papers hired at least one person not substantially younger than him, Berlin Standefer (age 50), as a trainer. Id. at 82-83. Geeding further admitted that one of the younger persons Smart Papers placed in a training position, Jerry Allen, had more training experience than him. Id. at 66. Geeding also admitted that the other two younger trainers were qualified for the position. Id. at 82. In his brief, Geeding complains that Smart Papers hired several substantially younger

39

persons as blender operators instead of him.  Although he had been a blender operator in the past, there is no suggestion in Geeding's deposition that he was even interested in working as a blender operator or that it somehow is a better job than the mixer operator position.  In short, there is nothing in the record to suggest that Smart Papers' decision not to offer Geeding a position as a trainer had anything to do with his age. Accordingly, granting summary judgment against Geeding on his age discrimination claims is appropriate.

Finally, there is no evidence that Smart Papers discriminated against Plaintiff Govan Begley (age 59) because of his age.  Smart Papers offered Begley a position working on the inward/outward table instead of the head carton operator position he held with International Paper.  Upon taking over the Mill, Smart Papers reduced the number of head carton operators from four to three and hired Carl Laney (age 56), Greg Laney (age 46), and Jeff Kittner (age 46) to fill those positions.  Doc. No. 105, Individual Plaintiffs Appendix, Ex. 5.  Again, the fact that Smart Papers filled one of the three positions with a person not substantially younger than Begley (Carl Laney) shows that age did not play a roll in Smart Papers' selection process.  Moreover, Begley also admitted that each of these applicants was as qualified as him to perform the head carton operator position. Begley Dep. at 83, 86.  Nothing in this record suggests that

40

Smart Papers discriminated against Begley because of his age with respect to his job offer. Accordingly, summary judgment against Begley on his age discrimination claims is appropriate.

Although Plaintiffs point to evidence that Smart Papers hired substantially younger employees for higher paying jobs for which they were also qualified, that evidence does not show that the real motive behind Smart Papers' actions was age discrimination. See Barnhart v. Pickrel, Schaeffer & Eberling Co., 12 F.3d 1382, 1395 (6th Cir. 1993)("[P]roof of replacement by a person outside the protected class is merely a prerequisite to the establishment of a prima facie case of employment discrimination. Such proof does nothing to establish pretext."). Nothing in the record suggests that age played a part in the placement decisions Smart Papers made regarding these Plaintiffs. Moreover, given that Smart Papers was endeavoring to hire an initial workforce for the Mill, Plaintiffs' theory that Smart Papers offered them jobs it knew they would not accept is implausible and attributes to Smart Papers a Machiavellian streak which is not evident on this record. It just makes no sense that an organization in need of workers would make sham job offers to these eight applicants because of their age when it was in the process of hiring a workforce largely composed of older workers. Therefore, no reasonable inference of discrimination can be drawn

41

from this argument.  <u>Reeves v. Sanderson Plumbing Prod., Inc.</u>,
530 U.S. 133, 148 (2000).

In summary, nothing in this record demonstrates that
Smart Papers discriminated against these Plaintiffs on the basis
of age.  Accordingly, Smart Papers' motion for summary judgment
with respect to the age discrimination claims of these Plaintiffs
is well-taken and is **GRANTED**.

Conclusion

In conclusion, upon complete review of the pleadings
and evidence for and against Smart Papers' motion for summary
judgment, nothing in the record, even when viewed in the light
most favorable to Plaintiffs, leads to a reasonable inference
that Smart Papers' discriminated against Plaintiffs because of
their age.  Accordingly, Smart Papers' motion for summary
judgment is well-taken and is **GRANTED**.  Each of Plaintiffs' age
discrimination claims versus Smart Papers is **DISMISSED WITH
PREJUDICE**.  In addition, because Defendant Sun Capital's
liability for age discrimination is completely derivative of
Smart Papers' liability, Sun Capital's motion for summary

42

judgment is well-taken and is **GRANTED**.  Each of Plaintiffs' age

discrimination claims versus Sun Capital is **DISMISSED WITH**

**PREJUDICE**.

          **IT IS SO ORDERED.**

Date_May 12, 2004___       _s/Sandra S. Beckwith____
                              Sandra S. Beckwith
                       United States District Judge