# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **DORMAN ANGEL, et al.** | : | CIVIL ACTION NO. **C-1-01-467** |
| | : | |
| Plaintiffs | : | JUDGE: **SANDRA S. BECKWITH** |
| | : | |
| vs. | : | |
| | : | **PLAINTIFFS' MEMORANDUM IN** |
| **UNITED PAPERWORKERS** | : | **OPPOSITION TO DEFENDANTS** |
| **INTERNATIONAL UNION (PACE)** | : | **PACE LOCAL 5-1967'S AND** |
| **LOCAL 1967, et al.** | : | **PAPER, ALLIED INDUSTRIAL,** |
| | : | **CHEMICAL & ENERGY WORKERS** |
| Defendants | : | **UNION, AFL-CIO'S MOTIONS FOR** |
| | : | **SUMMARY JUDGMENT** |

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS PACE LOCAL 5-1967'S AND PAPER, ALLIED
INDUSTRIAL, CHEMICAL & ENERGY WORKERS UNION, AFL-CIO'S
MOTIONS FOR SUMMARY JUDGMENT**

---

**MARK J. BYRNE - #0029243**
JACOBS, KLEINMAN, SEIBEL & MCNALLY
Attorney for Plaintiff
2300 Kroger Building
1014 Vine Street
Cincinnati, OH 45202
Tele (513) 381-6600
Fax (513) 381-4150
E-Mail: mbyrne@jksmlaw.com

## <u>TABLE OF CONTENTS AND AUTHORITIES</u>

<u>PAGE</u>

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

II.    SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . . . .    4

III.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

IV.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

1.    International Pace's First Argument That No Jurisdiction Exists
in This Case is Without Merit    . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

Authorities:

*Breininger v. Sheet Metal Workers International Assoc., Local Union
No. 6,* 493 U.S. 67, 83 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

*Pratt v. United Automobile Aerospace & Agriculture Implement
Workers of America, Local 1435,* 939 F.2d 385 (6th Cir. 1991) . . . . . . . . .    15

*Storey v. Local 327,* 759 F.2d 517, 523 (6th Cir. 1985) . . . . . . . . . . . . . . .    15

*Tisdale v. United Association of Journeymen and Apprentices of the
Plumbing and Pipefitting, Local 704,* 25 F.3d 1308 (6th Cir. 1994) . . . . . .    12, 14

*Vencal v. International Union of Operating Engineers,* 137 F.3d 420
(6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

*Wooddell v. International Bhd. of Elec. Workers, Local 71,* 502 U.S. 93,
101, 116 L. Ed. 2d 419, 112 S. Ct. 494 (1991) . . . . . . . . . . . . . . . . . . . . .    11, 12


2.    The International Pace's Second Argument That The EBP Was
Essentially a Resolution of a Grievance And Not a Collective
Bargaining Agreement or Amendment of the Same is Without
Merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15


3.    Defendant Pace's Argument That the Plaintiffs Failed to Exhaust
Their Administrative Remedies Relating to the Union's Unlawful
Conduct is Without Merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17


4.    Contrary to the Defendant Unions' Arguments, the Plaintiffs Have
Suffered Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

Authorities:

*Campbell v. International Paper Co.*, Case No. C-1-01-527
(Judge Beckwith) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20

5.      Plaintiffs' Claims Are Not Subject to Dismissal Because Plaintiffs
        Cannot Show That the Union's Actions Were Irrational.     . . . . . .     20

Authorities:

*Air Line Pilots v. O'Neill*, 499 U.S. 65 (1991)   . . . . . . . . . . . . . . . . . . . . .     20

*Higgins v. International Union Security Police Fire Professionals
of America, et al.*, 398 F.3d 384 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . .     21

CERTIFICATE OF SERVICE   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     22

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **DORMAN ANGEL, et al.** | : | CIVIL ACTION NO. **C-1-01-467** |
| | : | |
| Plaintiffs | : | JUDGE: **SANDRA S. BECKWITH** |
| | : | |
| vs. | : | |
| | : | **PLAINTIFFS' MEMORANDUM IN** |
| | : | **OPPOSITION TO DEFENDANTS** |
| **UNITED PAPERWORKERS** | : | **PACE LOCAL 5-1967'S AND** |
| **INTERNATIONAL UNION (PACE)** | : | **PAPER, ALLIED INDUSTRIAL,** |
| **LOCAL 1967, et al.** | : | **CHEMICAL & ENERGY WORKERS** |
| | : | **UNION, AFL-CIO'S MOTIONS FOR** |
| Defendants | : | **SUMMARY JUDGMENT** |

Now come Plaintiffs, by and through counsel, and hereby submit the following memorandum in opposition to the motions for summary judgment filed by Defendants PACE Local 5-1967 ("Pace") and Paper, Allied Industrial Chemical & Energy Workers Union, AFL-CIO ("International Pace"). The majority of the arguments made by the Defendants are those which were previously presented in their memoranda requesting a dismissal of the case which were overruled. As a result, Plaintiffs will rely upon this Court's prior opinion and decision in response to those arguments.

RESPECTFULLY SUBMITTED,

/s/ Mark J. Byrne
**MARK J. BYRNE - #0029243**
JACOBS, KLEINMAN, SEIBEL & MCNALLY
Trial Attorneys for Plaintiffs
2300 Kroger Building
1014 Vine Street
Cincinnati, OH 45202
Tele: (513) 381-6600
Fax: (513) 381-4150
E-mail: mbyrne@jksmlaw.com

<u>MEMORANDUM</u>

## I.   <u>INTRODUCTION</u>

As a result of this Court's ruling on the Defendant's motion to dismiss, the remaining

claim against Pace and International Pace are contained in count one of the complaint.  In count

one Plaintiffs allege that the International Pace and Pace committed a breach of contract and

breach of fiduciary duty.  Specifically, the Plaintiffs allege:

29.   There exists between the International Union and the Local 1967 contracts which require, authorize or declare that the International Union and Local 1967 should comply with the CBA (Collective Bargaining Agreement) entered into between the Defendants and IP (International Paper).

30.   Upon information and belief, the contract also requires that the International Union and the Local 1967 respect the By-Laws and constitutions between the International Union and the Local 1967 and the International Union Local 1967 and its members.

31.   The By-Laws between Local 1967 and its members require that all agreements with management are subject to ratification by the members.

32.   The various existing contracts between the Union and the By-Laws are attached hereto as Exhibits D and E were breached by the International Union and Local 1967 because Exhibit C (the Effects Bargaining Agreement) was not ratified according to its terms <u>by the members, nor was it subject to ratification by the members pursuant to the International Union and Local 1967's By-Laws and Constitution</u>.

33.   Defendants International Union and Local 1967 have committed a violation of 29 U.S.C. § 185(a) in breaching their contracts with the members.

34.   Plaintiffs also allege that this Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1337.  Section 1337 provides the district courts shall have original jurisdiction of any civil action or proceeding arising under Act of Congress regulating commerce or protecting trade and commerce.  Section 28 U.S.C. § 1337 confirms jurisdiction for suits for breach of the duty of fair representation.

35.   Section 9(A) (29 U.S.C. § 159(A)) of the National Labor Relations Act by virtue of its grant of the exclusive

representations stature for unions towards its members
creates a duty of fair representation upon the Union.

36.    Defendants Local 1967 and International Union have
violated the duty to represent its members and employees
of International Union fairly by negotiating and executing
Exhibit C without a full vote of the membership.

In response to this count, Defendant Pace has filed a motion for summary judgment

asserting four separate arguments.  First, Pace argues that the breach of the duty of fair

representation sought against the Union by its members must be dismissed because the Union's

acts in negotiating the Effects Bargaining Agreement with International Paper was not irrational.

(Def. Pace MSJ at pp.7-8)  Secondly, Pace asserts that the Effects Bargaining Agreement was

essentially the settlement of 200 grievances.  (Def. Pace MSJ at p. 8)  Pace contends that the

Pace International Constitution did not require a membership vote on settlement of grievances.

(Def. Pace MSJ at p. 8)  As a result, the Effects Bargaining Agreement was not a collective

bargaining agreement to which the International Pace Constitution Article Section XVI, Section

1 would apply.  (Def. Pace MSJ at p.9)  Third, Defendant Pace argues that the Plaintiffs

sustained no damage from the failure to vote because the members received jobs with Smart.

(Def. Pace MSJ at 11)  Finally, Defendant Pace contends that the Plaintiffs failed to exhaust their

administrative remedies relating to the Union's unlawful conduct and therefore this suit is

inappropriate.  (Def. Pace MSJ at pp. 11-12)

International Pace has also filed a motion for summary judgment requesting that count

one of the complaint be dismissed.  International Pace submits that no contract violation

occurred, thus no 301 jurisdiction exists.  (Def. Pace MSJ at p. 4)  Secondly, International Pace

believes that the Union came to an agreement with International Paper ("IP") resolving all issues

with IP.  Thus, the authority under Article XVI, Section 3 of the International Constitution was

invoked and no ratification vote was required.  (Def. Pace MSJ at p. 5)  Third, IP argues that the

agreement reached with IP was not a new collective bargaining agreement or an amendment

because it did not involve ongoing terms and conditions of employment.  (Def. Pace MSJ at p. 6)

International Pace urges this Court to adopt its interpretation of its own constitution concluding the EBP is not a collective bargaining agreement.  (Def. Pace MSJ at p. 6)  Finally, the Defendant asserts that even if a contract violation exists, the Plaintiffs cannot show that they were damaged and therefore they are not entitled to any recovery.  (Def. Pace MSJ at p. 7)

For the foregoing reasons, Plaintiffs respectfully request the Defendants' motions for summary judgment be denied.

## II.     SUMMARY JUDGMENT STANDARD

In a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see, *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

## III.     STATEMENT OF FACTS

Plaintiffs were members of both International Pace and Pace.  International Pace has about 250,000 members nationwide.  Ken Stanifer is the International Pace representative to Pace.  (Stanifer Dep., p. 13)  On behalf of the Union members, his duties included negotiation, arbitration and taking care of issues relating to the Union members of Pace and International Pace.  (Stanifer Dep., pp. 12-13)  The Constitution of International Pace governed the rights, duties and responsibilities that existed between both Unions and its members.  (Stanifer Dep., p. 17)  Local by-laws cannot be in conflict or contradict the International Constitution.  (Stanifer Dep., p. 17)

The Union members were subject to a Collective Bargaining Agreement ("CBA") entered into between Champion International Corporation and the Local and International Unions which was scheduled to run from September 18, 1990 through September 19, 1995.

(Stanifer Dep., p. 21, Exh. 1)[1]  The first agreement was later supplemented by an extension.  This extension was set to expire in September 1998.  The extension provided that any job reductions or elimination of positions would be offset through normal attrition, reassignment, and/or negotiated severance.  (Stanifer Dep., p. 22, Exh. 2)  The purpose of the extension was to ensure employment of the Union members based upon the conditions recognized in the extension.  (Stanifer Dep., pp. 34/24-35/2)  In addition, any job reductions or elimination of positions would be offset through normal attrition, reassignment or negotiated severance.  (Stanifer Dep., Exh. 2, § 7)  This extension became part of the CBA when IP purchased the mill in the year 2000.  (Stanifer Dep., p. 32)  There were no other negotiations which extended the CBA.  (Stanifer Dep., p. 33/4)  If a new agreement was not reached at the end of 1998, then the CBA would continue from year to year.  (Stanifer Dep., Exh. 1, §35.01 at p. 46)   Thus, the CBA herein under Exhibits 1 and 2 was set to expire in September 2001.  (Stanifer Dep., p. 33/11)  The original CBA was never terminated by the parties.  (Stanifer Dep., p. 25)

In addition to the foregoing, Champion and the Union entered into severance policy no. 817 which became part of the CBA.  (Bray 2d Dep. dated 12/17/04, p. 6; Exh. 2)  Under that agreement which is dated April 16, 1996, the following provisions were agreed to:

> 1.    Adoption of the Policy.  Champion International Corporation ("Champion") hereby adopts the Hamilton Mill Hourly Employees Reconfiguration Severance Policy #817 ("Policy").  The Policy, effective as of the date this Mutual Agreement is agreed and entered into consists of this document and the attached Summary Plan Description, the provisions of which are made a part hereof and incorporated herein by reference.
>
> . . .
>
> 3.    Amendment and Termination.  The Company hereby reserves the right to amend or terminate the Policy at any

---

[1]    Section 35.01 of the CBA provided in part:  "This Agreement shall remain in full force and effect from September 18, 1990 through September 17, 1995, and from year to year thereafter, unless terminated in accordance with provisions outlined below."

time by action of the Pension and Employee Benefits Committee of Champion International Corporation or its delegate.

. . .

<u>Section 1 Definitions</u>

. . .

1.5    <u>Effective Time</u> is the period from May 1, 1996 to and including September 21, 2001.

1.6    <u>Eligible Employee</u> is (subject to Section 1.7 and Section 1.10) any regular status hourly bargaining unit Champion employee represented by Local 1967:

(a)    who, subject to Section 2.1(c)(B), self nominates for inclusion under the Policy pursuant to Section 2(a) during the Effective Time but before the 56th day anniversary of the signing of the Mutual Agreement of which the Policy is a part; and who remains in active employment until the Termination Date; or

(b)    whose employment is or will be involuntarily terminated as a result of the Hamilton Mill Reconfiguration during the Effective Time after written notice of such employment termination and who remains in active employment until the Termination Date.

. . .

<u>Section 2 Severance Benefits</u>

. . .

2.2    <u>Involuntary Separation</u>

Subject to Section 1.7, Section 4 and Section 5, any Eligible Employee under Section 1.6(b) whose employment is involuntarily terminated during the Effective Time is entitled to the following benefits not to exceed fifty-two (52) week's Earnings:

(i)    One (1) week's Earnings for each year of completed continuous services determined as of the Termination Date; plus

(ii)    One (1) week's Earnings for each year of completed continuous services in excess of fifteen (15) years determined as of the Termination Date.

. . .

Section 9 Amendment and Termination

 The Company reserves the right to amend or terminate the Policy
at any time.

(Bray 2d Dep. dated 12/17/04, Exh. 2)

 Prior to the expiration of the CBA, the Local and International Union officers reached an
agreement with International Paper in which hundreds of employees who were subject to the
agreement were denied severance to which they were entitled.[2]  This denial took the form of an
Effects Bargaining Agreement ("EBP").  A copy of that agreement dated January 23, 2001, is
attached as Exhibit 4 to the deposition of Ken Stanifer.  (Stanifer Dep., Exh. 4, p. 40)  Stanifer
first learned that International Paper would be selling the Hamilton B Street Mill to Smart Papers
on or about January 8, 2001. (Stanifer Dep., p. 41)  Stanifer contacted Tim Bray, the President of
Pace, and conveyed that information to him.

 Subsequently, Stanifer and Bray met with representatives from IP to bargain the effects
of the sale with IP.  (Stanifer Dep., p. 52)  Prior to the meeting, Bray and Stanifer put together a
list of items to be discussed relating to the effects of the sale.  These items included severance
pay, health care, vacation payment and outplacement service.  (Stanifer Dep., pp. 52-53)  Day
one of the meeting began on January 22 at approximately 10:00 a.m.  During the meeting the
issues which were part of the list put together by Bray and Stanifer were discussed.[3]  Stanifer had
previously negotiated with IP relating to the closing and sale of an IP plant.  This previous
negotiations occurred with the IP plant in Springdale, Ohio, where 300 employees lost their jobs
in March of 2000.  (Stanifer Dep., p. 123)  In that effects bargaining agreement Stanifer

---

[2] The agreement of sale between IP and Smart was executed on or about December
29, 2000.  (Stewart Dep., p. 18/4)

[3] Exhibit 5 to the second deposition of Tim Bray dated 12/17/04 identified the list
of issues to be discussed with IP as part of the effects bargaining.  Nowhere does
it indicate that grievances are part of that negotiation process.  (Bray Dep., p.
19/8)

negotiated 60 hours of severance for all of the employees. (Stanifer Dep., p. 123) All of the employees received this severance. (Stanifer Dep., p. 130/24) This amount was paid by IP. (Stanifer Dep., p. 130/22)

As a result of his previous experience with IP, Stanifer requested severance for all employees at the B Street Mill. (Stewart Dep., p. 34/11) He requested 60 hours of pay, times an employee's regular rate of pay, times the years of service for an employee. (Stanifer Dep., pp. 141/13-17, 90/9-15) IP countered with an offer to pay all the employees who were being terminated from the B Street Mill 40 hours of severance at their regular rate, multiplied by the number of years of service. (Stanifer Dep., p. 141/2-4) Stanifer, on behalf of all the employees, rejected IP's offer and told the negotiating team for IP that he expected nothing less than 60 hours. (Stanifer Dep., p. 141/6) It was IP's policy to pay severance to laid off employees. (Stewart Dep., p. 62/12-16) As a result of the negotiation, Stanifer inexplicably gave up the severance for all employees and instead entered into what was marked as Exhibit 4 which paid severance to only part of the work force and forced all employees to apply for a job with Smart. The employees hired by Smart would not be entitled to any severance. (Stewart Dep., p. 34/18) After the effects bargaining package was completed, Stanifer, Bray and the leadership of Pace began working on the outstanding grievances that existed against IP by the Union members. (Stanifer Dep., p. 57) Over 200 grievances were unilaterally settled by the Union leadership without contacting any of the individuals who had filed them. (Stanifer Dep., p. 57)

On January 24, Stanifer and Bray attended a meeting held by the Executive Board of Pace to discuss the terms and conditions of the effects bargaining that had just been completed over the previous two days. (Stanifer Dep., p. 60) During the meeting, the agreement that had been reached with IP identified as Exhibit 4 was discussed. One person from the Executive Board Committee asked Stanifer whether the package identified in Exhibit 4 would be voted upon. (Stanifer Dep., p. 62) Stanifer indicated that he did not believe that it needed to be voted upon, but would check with a representative of the International Pace. (Stanifer Dep., p. 62)

-8-

Stanifer contacted Gerald Johnston, an International Pace officer, regarding the EBP.[4]  Johnston told Stanifer that a membership vote was not required, but even if one was necessary, that the Union leadership was to sign the EBP regardless of the results of any vote.  (Stanifer Dep., p. 65)  Stanifer believed that the Executive Board did not want to vote on it.  (Stanifer Dep., p. 62)  According to Stanifer, the EBP was a severance package and therefore it did not need to be voted upon by the membership.  (Stanifer Dep., p. 63)  Thus, Stanifer concluded that a vote by the membership was not required because it was not part of the CBA nor was it an amendment of the same.  (Stanifer Dep., p. 63)  He reached this conclusion without consulting with any legal counsel.  (Stanifer Dep., p. 63)

On January 26, a membership meeting of Pace was held.  (Stanifer Dep., p. 76)  During the meeting, Stanifer explained the EBP to the membership.  (Stanifer Dep., p. 76)  Upon completion of the explanation, a Union member asked whether or not there would be a vote on the EBP.  (Stanifer Dep., pp. 78-79)  Stanifer said that there would be no vote on the EBP.  (Stanifer Dep., pp. 78-79)  Regardless, Stanifer stated that even if a motion had been made by the membership to undertake a vote, it would not have made a difference with respect to the his execution of the EBP because the Union leadership was going to sign it regardless of the desire of its members.  (Stanifer Dep., p. 79/22)  These actions by the Union leadership constituted a clear violation of both the Local bylaws and the International Constitution.

The EBP in question provided as follows:

> As a result of the sale of the Hamilton B Street Mill to SMART Papers, LLC, International Paper proposes the following benefits to the PACE International Union and its affiliate Local 1967.
>
> The following proposal is contingent upon timely ratification of this package by January 31, 2001.

---

[4]     Gerald Johnston was the vice president and regional director of Pace International.  (Johnston Dep., p. 6)

SEVERANCE:

Employees who do not receive an employment offer from SMART Papers will be paid 60 hours pay at the rate of their current permanent classification (not red circle rates) on the date of sale for each full and pro-rata year of continuous service with International Paper.  Payment will be made as a lump sum within 30 days following date of sale and this payment will be subject to all applicable taxes.

Employees who do receive an employment offer from SMART Paper will not be entitled to severance pay unless they are terminated from SMART Papers, through no fault of their own, within eighteen (18) months of the sale date.

To be eligible for severance pay, an employee must be actively at work on the date of sale.  Employees on disability or other approved leaves must be released to return to work in their former classification.

The Union agrees that Severance Program 817, or any other Severance Program, does not apply and that this severance agreement is the only severance agreement applicable to the employees of the Hamilton B Street Facility.

In addition, the EBP included the issues of medical insurance, dental insurance, life insurance, retiree life insurance, sickness and accident insurance, pension benefits, vacation, retiree medical coverage, outplacement assistance and employee assistance programs.  (Stanifer Dep., Exh. 4) The very last issue identified was that of outstanding grievances.  (Stanifer Dep., Exh. 4)

By its very terms, the EBP was contingent upon ratification by January 31, 2001. According to Stanifer, the term ratification means every Union member attending a ratification meeting is given a copy of a proposed document, the document is read and explained and questions of the membership answered by Union leadership.  (Stanifer Dep., p. 29)  Ratification includes voting by the membership.  (Stanifer Dep., p. 29/21)

The International Constitution for Pace required that the EBP be voted upon. Specifically, Article XVI, Section 1, provided as follows:

A collective bargaining agreement must be ratified and approved by a majority of the members covered by said agreement present and voting on the question by secret ballot before the same shall be executed on behalf of the Union; except in the case of multi-plant

> or multi-employer agreements, where the Local Union has
> authorized designated delegates to ratify a collective bargaining
> agreement, in which case the agreement shall be executed upon the
> ratification of the agreement by a majority of the delegates of all
> represented Local Unions present and voting by secret ballot.

(Stanifer Dep., Exh. 5, p. 50)  Similarly, the By-laws and Working Rules for Pace provided

under Article XIV, Section 3:

> With the assistance of an authorized Representative of the
> International Union, the Bargaining Committee shall conclude
> agreements with Management subject to ratification by the
> members of the Local Union.

(Stanifer Dep., Exh. 7, p. 22)  Again, notwithstanding the foregoing language, the EBP was not

ratified by the members of the Union and was signed by Stanifer without such ratification and in

clear violation of the contractual rights of its members.  (Stanifer Dep., p. 41)  Subsequently, the

B Street Mill was closed on February 9, 2001.  (Bray 2d Dep. dated 12/17/04, p. 14/4)

## IV.    ARGUMENT

### 1.    International Pace's First Argument That No Jurisdiction Exists in This Case is Without Merit.

In its prior decision, the Court recognized that Plaintiffs' cause of action in count one

asserted a claim against Pace and International Pace pursuant to 28 U.S.C. § 1337 and Section

301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Essentially, Plaintiffs

allege that the Unions breached the local bylaws and the constitution of the International Union

by ratifying the EBP without submitting the issue to the rank and file for ratification.  Plaintiffs

also allege that the Unions breached their duty of fair representation by not submitting the EBP

to the membership for a vote.  In its decision, the Court recognized that effects bargaining is

mandatory.  Therefore, an EBP is a form of collective bargaining agreement.  (Doc. 61 at p. 15)

The Court also stated in the footnote that:

> Individual union members may bring suit against their union under
> § 301 for breach of the union constitution because the union
> constitution is considered to be a contract between labor
> organizations, and, the individual members of the union are
> considered to be third-part beneficiaries of that contract.  See
> *Wooddell v. International Bhd. of Elec. Workers, Local 71,* 502

> U.S. 93, 101, 116 L. Ed. 2d 419, 112 S. Ct. 494 (1991); *Tisdale v. United Ass'n of Journeymen*, 25 F.3d 1308, 1311 (6th Cir. 1994).

(Doc. 61 at p. 18)

. . .

> The Court need not, however, resolve this conflict since it appears that the right to ratification of agreements in the local bylaws is merely coextensive, or a reiteration, of the same right given in the International constitution. In other words, in this case, a claim for breach of the local bylaw regarding ratification would achieve no more or no less than a claim for breach of the same right in the constitution.

(Doc. 61 at pp. 18-19)

The Court's opinion is consistent with the statutory and case law that applies to the facts in this case. A cause of action does exist for a Union member against the Local Union and International Union for breach of a by-law and/or constitution. 29 U.S.C. § 185 provides as follows:

> Suits for a violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in the Act, or between such labor organizations, may be brought in any district court in the United States having jurisdiction of the parties without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

In the case of *Wooddell v. IBEW*, 502 U.S. 93 (1991), the Supreme Court was confronted with the issue of whether or not a district court has jurisdiction over a breach of contract suit brought by a union member against his local union and the international. In that case, the court held that subject matter jurisdiction conferred by Section 301 extends to suits on <u>union constitutions</u> brought by individual members. (Emphasis added) In *Wooddell*, the petitioner charged a violation of a contract between two unions pursuant to Section 301. The amended complaint in this case alleged that the constitution of the International Pace required all unions to live up to all collective bargaining agreements and that the <u>International Constitution and the by-laws</u> of Pace were contracts which were binding upon the local union. Petitioner alleged that the

-12-

defendants had breached the contracts between the two parties and that he had been discriminated against in hiring, and job referrals contrary to the CBA's and the international constitution.  In holding that a union member could sue his local and international unions under Section 301 for violation of those by-laws and constitutions, the Supreme Court stated that Congress expressly provided in Section 301(a) for federal jurisdiction over contracts between an employer and a labor organization or between labor organizations.  Collective bargaining agreements are the principal form of contract between an employer and a labor organization.  Individual union members who are the beneficiaries of the CBA may bring suit on these contracts under Section 301.  Likewise, union constitutions are an important form of contract between labor organizations.  Members of a collective bargaining unit are often the beneficiaries of such inter-union contracts, and when they are, they likewise may bring suit on these contracts under Section 301.  *Id.*

In this case, it is clear that the Petitioners have alleged and proven a breach of contract between the local union and PACE Local 5-1967.  The Local Union is required to follow its own By-laws.  Specifically, Plaintiffs alleged that the By-laws provide that any agreement with management was subject to ratification by membership of the Local Union.  (Stanifer Dep., Exh. 7)  Article XIV, Section 3 of the Effects Agreement also required that it be ratified by January 31, 2000.  The International Pace and Pace have by-laws and constitutions between themselves which require all agreements with management are subject to ratification by the members.[5]

As provided in the PACE Local 5-1967's Constitution, any collective bargaining agreement must be approved and ratified by a majority of the members covered by such

---

[5]    In Article VII, Section 1 at page 23 of the International Constitution (Exhibit E), local unions are chartered by the International Union, and in Section 5, local unions must adopt the by-laws, rules and regulations which shall not conflict with the provisions of the International Constitution and are subject to the approval of the International President.  Under Article X, Section 5, membership in a Local Union constitutes membership in the International Union.  Finally, under Article XV, Section 1, page 50, collective bargaining agreements must be approved and ratified by a majority of the members covered by that agreement.

-13-

agreement.[6]  Severance pay is a mandatory subject of bargaining.

In essence, therefore, Plaintiffs' cause of action includes the following:

1.      That there exists a contract between International and the Local Union which requires ratification of any collective bargaining agreement by the membership.

2.      That the Local Union required that any agreement with management to be voted on by the membership.

3.      The EBP which affected terms and conditions of employment including severance pay, medical benefits, etc., is a term of a collective bargaining agreement.

4.      The EBP was not subject to a vote by the membership of the Union.

5.      As a result, a violation of Section 301 exists allowing Plaintiffs to bring a cause of action against both the Local and International Union for the violation of the same.

*Tisdale v. United Association of Journeymen and Apprentices of the Plumbing and Pipefitting, Local 704*, 25 F.3d 1308 (6th Cir. 1994).

Alternatively, Plaintiffs' complaints against the Defendant are also based upon the jurisdiction conferred within 28 U.S.C. § 1337.  Section 1337 confers jurisdiction over cases involving the independent relationship between the union member and his union without regard to a collective bargaining agreement.  *Vencal v. International Union of Operating Engineers*, 137 F.3d 420 (6th Cir. 1998), quoting from *Breininger v. Sheet Metal Workers International Assoc., Local Union No. 6*, 493 U.S. 67, 83 (1989).  Under Section 1337,  jurisdiction exists where a cause of action arises under a congressional act relating to commerce.  Section 1337 provides jurisdiction for fair representation suits because the duty of fair representation derives from the National Labor Relations Act and the NLRA is an act of Congress regulating commerce.  In this context, the fair representation claim is a separate cause of action for many

---

[6]      The definition of a collective bargaining agreement is "any agreement between an employer and a labor union which regulates terms and conditions of employment."  (*Black's Law Dictionary, 6th Edition* 1991 at p. 180).

possible suits against the employer.  *Vencal v. International Union of Operating Engineers*, *supra*.

Section 9(A) of the National Labor Relations Act by virtue of its grant of the exclusive representation status to a union over employees that make up a bargaining agreement creates a duty of fair representation on the representative union.  *Pratt v. United Automobile Aerospace & Agriculture Implement Workers of America, Local 1435*, 939 F.2d 385 (6th Cir. 1991).  The breach of the duty of fair representation flows due to the union's statutory position as exclusive representative and exists both before and after execution of a collective bargaining agreement.  *Pratt v. Local 1435*, *supra*, quoting from *Storey v. Local 327*, 759 F.2d 517, 523 (6th Cir. 1985).  29 U.S.C. § 159(a) in conjunction with 29 U.S.C. § 1337 creates a jurisdictional basis for breach of the duty of fair representation, independent of Section 301.  *Pratt v. Local 1435*, *supra*.  Plaintiffs' allegations that Defendant either violated a contract and that they suffered as third party beneficiaries is appropriately brought before this Court under Section 301.  Alternatively, jurisdiction exists for the Unions' breach of duty of fair representation under § 1337.  Therefore, International Pace's motion for summary judgment is without merit.

**2.      The International Pace's Second Argument That The EBP Was Essentially a Resolution of a Grievance And Not a Collective Bargaining Agreement or Amendment of the Same is Without Merit.**

Defendant International Pace argues that it had the authority under Article XVI, Section 3, to resolve all issues with IP because the issues essentially involve grievances.  International Pace also argues that the EBP was not a collective bargaining agreement because it did not involve ongoing terms and conditions of employment.  Clearly, there is no support for these arguments and they must be dismissed.

At page 20 of this Court's opinion, the Court recognized that International Pace's Constitution superseded any provisions in the Local bylaws which may be in conflict.  However, the Court refused to give credence to the Unions' argument that the EBP was a resolution of grievances and therefore Article XVI, Section 3 was applicable.  Instead, this Court stated:

-15-

> There are several problems with this argument.  First, there is no evidence on this record, or for that matter, there are no suggestions in the complaint, that International Paper and the Unions entered into the EBP in order to settle grievances over the issue of severance pay.  Indeed, from all indications in the complaint, which we assume to be true, the parties entered into the EBP in order to facilitate the transfer of the B Street Mill to Smart Paper.
>
> . . .
>
> The Unions have not presented an official interpretation that a 'grievance' or 'dispute' within the meaning of the constitution encompasses effects bargaining agreements.  In any event, even if the Court were presented with such an interpretation, this interpretation would be unreasonable because it would read out of the constitution the provision that members are entitled to vote on collective bargaining agreements.  As the Court stated earlier, labor contracts should not be read to render terms nugatory.  If the power to unilaterally settle grievances included the power to unilaterally approve the EBP, which the Court has stated in a form of CBA, the provision of the constitution giving the members the right to vote on CBA's affecting them would be rendered nugatory.  Therefore, the Court rejects the Unions' contention that their power to settle grievances supercedes Plaintiffs' right to vote on collective bargaining agreements.

(Doc. 61 at pp. 20-21)

Since the Court's initial decision, it is clear that the EBP is a collective bargaining agreement and was not entered into for the purpose of resolving outstanding grievances. Specifically, when one reviews the EBP, the grievance issue is but one of many issues that are included within the agreement itself.  In addition, even prior to beginning the negotiation with IP, Union officials put together a list of topics for discussion resolution.  These topics included vacation, severance pay, health care, pension, life insurance, death benefits, dental, EAP, job placement, financial counseling, retirement, and eligibility.  (Bray 2d Dep. dated 12/17/04, Exh. 5)  Nowhere on the document is the term grievance identified as a topic of discussion for resolution with IP.  Finally, Tom Stewart who was one of the main negotiators for IP testified that the EBP was considered to be an extension of the existing CBA.  (Stewart Dep., p. 25/4)  He specifically told Bray and Stanifer that IP did not intend to cancel the existing labor agreement. (Stewart Dep., p. 25/12)  Thus, the negotiation that occurred was part of the CBA that existed

-16-

between the parties.  The EBP altered and changed the terms and conditions of employment between IP and the Unions.[7]

Defendant Pace claims that the provisions in the Local bylaws which requires that any agreement with management be ratified is inapplicable because the EBP is a settlement of grievances.  As previously argued, such a position is illogical especially when one applies the language in the bylaws to the facts at hand.  Even if one could construe the language in the Local bylaw in a manner consistent with the argument of Pace, it still is subject to the International Constitution which clearly requires ratification of the EBP.

### 3. Defendant Pace's Argument That the Plaintiffs Failed to Exhaust Their Administrative Remedies Relating to the Union's Unlawful Conduct is Without Merit.

In its prior opinion, this Court stated as follows:

> In this case, the Court agrees with Plaintiffs that neither the local bylaws nor the International constitution provide an internal grievance mechanism to be exhausted.  n5  The Court observes that both the bylaws and the constitution contain trial and appeal procedures regarding the administration of discipline to members.  See Doc. No. 34, Ex. D, Bylaws Art. XVI; Ex. E, Constitution Art. XI.  The Court, however, does not see anything in either of these documents which outlines a procedure for a union member to challenge actions taken by the Local or by a Local official.

(Doc. 61 at pp. 21-22)

. . .

> Thus, the Court concludes that Unions do not have a mandatory internal grievance procedure which must be followed.  Accordingly, the Court concludes that Plaintiffs are not required to exhaust any internal grievance procedures with respect to the claims in Count II of the second amended complaint.

(Doc. 61 at p. 28)  No further discussion is necessary.

---

[7]    Pace in its motion for summary judgment also argues that the EBP was essentially the settlement of 200 grievances and therefore the International Constitution did not require a membership vote.  (Def. Pace MSJ at p. 8)  Pace also asserts that the EBP was not a collective bargaining agreement to which the International Pace Constitution would apply.  (Def. Pace MSJ at p. 9)  The arguments submitted herein in response to International's Pace's motion are equally applicable herein and will not be repeated in response to Pace's motion.

**4.    Contrary to the Defendant Unions' Arguments, the Plaintiffs Have Suffered Damages.**

The Defendants argue that the Plaintiffs suffered no damages because they received jobs at Smart. (Def. Pace MSJ at pp. 11-12; Def. International Pace MSJ at p. 7) This position has no merit. First, when the Union leadership began negotiations with IP, they received an offer for severance on behalf of all employees for 40 hours at an employee's regular rate of pay multiplied by the years of service. The Defendants countered with 60 hours of severance. By the time the EBP was completed, the employees who would have received 40 hours by virtue of the offer from IP was severely reduced. Those employees included the Plaintiffs herein. As Tom Stewart indicated, it was the policy of IP to pay severance to all terminated employees. (Stewart Dep., p. 62/12) The Union negotiated away the severance for the Plaintiffs herein and then refused to let the Plaintiffs vote upon that same agreement in violation of the respective bylaws and constitution of the Defendants. The damages therefore will be the 40 hours original severance offered by IP for each Plaintiff at their regular rate of pay multiplied by their years of service prior to their termination of February 9, 2001.

Secondly, by executing the EBP without a vote of the full membership, the Defendants forfeited Plaintiffs' right to severance under Severance Program 817. Specifically the Union agreed that Severance Program 817 does not apply to any of the employees that would be terminated. Under that program which was to run until September of 2001, Plaintiffs would have been entitled to a specific amount of severance based upon that program for involuntary terminations. The Union bargained away the severance that had been established in the prior program without a vote of the membership.

Defendant Pace argues that Severance Program 817 contains a provision allowing the company the right to amend or terminate the policy at any time and thus no damages occurred by the company's termination of the Plan. However, Defendant Pace fails to identify for the Court that the initial page attached to the summary plan description is also applicable to the administration of the plan. This severance plan was an employee welfare benefit plan as

-18-

identified under ERISA. Thus, the severance policy could only be terminated or amended by the action of the Pension and Employee Benefits Committee of Champion International Corporation or its delegate. There is no evidence in this case that such actions by the Benefit Committee ever took place. Therefore, the Union in its infinite wisdom bargained away the only severance plan applicable to the Plaintiffs without the Plaintiffs' acquiescence and without ensuring that IP followed its own policy in terminating the plan in accordance with the plan provisions. Although Plaintiffs realize that the EBP itself cannot be questioned, the consequences of the Union's actions are subject to attack. Thus, the damages to the Plaintiffs due to the Union's actions and in failing to have a vote is one week's earnings for each year of completed continuous service and additional weeks' earnings for service in excess of 15 years, plus interest on the amounts from February 9, 2001 to the present.

Third, by executing the EBP without a Union vote, the Union leadership negotiated away any benefits the Plaintiffs may have had under the WARN Act. The WARN Act provides that an employer should not order a plant closing until the end of a 60 day period after the employer serves written notice of such order to each representative of the affected employees. 29 U.S.C. §2102(a). IP qualified as an employer under the WARN Act because it was a business enterprise that employed more than 100 employees. 29 U.S.C. § 2101(a)(1). Thus, IP could not order the closing of the B Street Mill without giving its employees or the Union a 60 day notice. IP ordered the B Street Mill to close without giving the required 60 day notice. IP informed the Union that the plant was sold on January 8, 2001. On February 9, 2001, the B Street Mill was closed by IP. This qualifies as plant closure under the WARN Act because it was the permanent shutdown of a single site of employment that resulted in the loss of more than 50 employees during a 30 day period. 29 U.S.C. § 2101(a)(2). Therefore, IP violated the WARN Act and was liable to its employees for the damages prescribed in 29 U.S.C. § 2104.

Instead, the Union, without a vote, agreed to an EBP which effectively wiped out these Plaintiffs' rights to benefits under the WARN Act. The WARN Act provides exclusions from

the definition of employment loss.  Specifically 29 U.S.C. § 2101(b)(1) excludes employees from receiving benefits in the event they become employed by the successive buyer as part of the sale.  *Campbell v. International Paper Co.*, Case No. C-1-01-527 (Judge Beckwith) at pp. 16-17.  In this case, the Unions by negotiating that each employee must apply with Smart before receiving severance created a scenario for the Plaintiffs herein which not only required them to forfeit their severance, but waived their WARN rights by submitting the application for employment.  Those employees that were not accepted for employment received both severance and benefits under WARN from IP.  If the Union members had been given the opportunity to vote on the EBP or if the EBP had not been ratified, all of these Plaintiffs would have lost their jobs as a result of the sale and had been entitled to WARN Act benefits.  *Id.* at p. 18.

Fourth, the Plaintiffs are entitled to a emotional distress as a result of the Defendants' violation of 29 U.S.C. § 185.

Fifth, by agreeing to the EBP without a vote of the membership, the Union prematurely cutoff the Plaintiffs' right to future wages and benefits which were provided under the CBA at least until September 2001.  This was the date the CBA was set to expire.  Thus, Plaintiffs' damages are the wages and benefits they would otherwise be entitled to for that six month period from IP.

**5.      Plaintiffs' Claims Are Not Subject to Dismissal Because Plaintiffs Cannot Show That the Union's Actions Were Irrational.**

Defendant Pace argues at page 8 of its motion that Plaintiffs' claims must be dismissed because "the Union's action negotiating the EBP agreement with IP was not irrational."  Defendant relies upon the case of *Air Line Pilots v. O'Neill*, 499 U.S. 65 (1991).  This case does not support the Defendant's position.  There is no legal standard which requires the Union activity be irrational before liability is established.  At most, the *O'Neill* decision identified the standard as arbitrary.  However, in an action for breach of contract as constituted in the breach of the Union's fiduciary responsibilities, the case law identified herein only requires a demonstration that the Union has failed to follow its own constitution in finding a violation.

-20-

Alternatively, Plaintiffs seek recovery under 28 U.S.C. § 1337 and § 9(A) of the National Labor Relations Act.  29 U.S.C. § 159(A).  For that prong of the Plaintiffs' claims, in the event the Court were to find that Plaintiffs must prove the Defendant's actions were arbitrary, a material issue of fact exists when the facts in the case are examined.  First, the Union leadership entered into negotiations with management over an EBP demanding 60 hours of severance for all employees.  The Union rejected IP's offer of 40 hours which resulted in the deprivation of severance to the Plaintiffs herein.  Second, the Unions during the negotiation process agreed that Severance Policy 817 which was identified as an Employee Welfare Benefit Plan would no longer be applicable to the Union employees.  The Union agreed to the termination of this plan notwithstanding IP's failure to follow the provisions of the plan itself.  Although the plan can be terminated, it had to be accomplished in accordance with action of the Pension and Employee Benefits Committee.  No such action took place.

Third, in violation of the Local bylaws and the International Constitution, the Union membership consciously decided not to vote on the ratification of the EBP.  These actions were taken by the Union leadership even though the Union leadership considered the EBP a severance package.  (Stanifer Dep., p. 63)  Moreover, Tom Stewart, the lead negotiator for IP, told Stanifer and Bray that he considered the EBP to be part of the existing CBA and an extension of the same.  Instead of proceeding with caution, the Union leadership decided that even if a vote of the membership was required, to ignore the request and sign the EBP.  It was only after this litigation ensued that the Unions have now taken the position in their memoranda that the EBP is the resolution of a grievance or complaint.  Yet at no time did Stanifer, who was the lead negotiator, consider the EBP a grievance or complaint which was not subject to the voting requirements of the International Constitution.

Defendant International Pace cites this Court to *Higgins v. International Union Security Police Fire Professionals of America, et al.*, 398 F.3d 384 (6th Cir. 2005) as support that the Plaintiffs' case should be dismissed.  However, that case is distinguishable.  In that case the

Sixth Circuit held that the ratification of a CBA modification was not required under the collective bargaining agreement.  Moreover, the court did not address the issue of a violation of a union's bylaws or constitution.

      For all the foregoing reasons, Plaintiffs request that the motion for summary judgment be denied.

                         RESPECTFULLY SUBMITTED,

                         /s/ Mark J. Byrne
                         **MARK J. BYRNE - #0029243**
                         JACOBS, KLEINMAN, SEIBEL & MCNALLY
                         Trial Attorneys for Plaintiffs
                         2300 Kroger Building
                         1014 Vine Street
                         Cincinnati, OH  45202
                         Tele: (513) 381-6600
                         Fax:  (513) 381-4150
                         E-mail:  mbyrne@jksmlaw.com

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on March 24, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Grant S. Cowan, Esquire
Frost Brown Todd LLC
Attorney for Defendant
  International Paper Company
2200 PNC Center
201 E. Fifth Street
Cincinnati, OH  45202
gcowan@fbtlaw.com

Vincent J. Miraglia, Esquire
International Paper Company
Legal Department
6400 Poplar Avenue
Memphis, TN  38197
vincent.miraglia@ipaper.com

W. Carter Younger, Esquire
McGuire Woods LLP
Attorney for Defendant
  International Paper Company
One James Center
901 E. Cary Street
Richmond, VA  23219
cyounger@mcguirewoods.com

James B. Robinson, Esquire
Kircher, Robinson & Welch
Attorney for Defendant
  PACE International Union
2520 Kroger Building
1014 Vine Street
Cincinnati, OH  45202
kircher@fuse.net

Robert J. Hollingsworth, Esquire
Cors & Bassett
Attorney for Defendant Smart Papers, LLC
537 E. Pete Rose Way, Suite 400
Cincinnati, OH  45202
rjh@corsbassett.com

Stanley F. Lechner, Esquire
Laine S. Posel, Esquire
Morgan, Lewis & Bockius
Attorney for Defendant
   Smart Papers, LLC
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
slechner@morganlewis.com
lposel@morganlewis.com

Robert I. Doggett, Esquire
Attorney for Defendant
   PACE Local 5-1967
6740 Clough Pike, Room 200
Cincinnati, OH  45244
rdoggett@sprynet.com

I also certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

Ronald Morgan, Esquire
Morgan & Associates
118 South Second Street
Hamilton, OH  45011

Charles P. Groppe, Esquire
Morgan, Lewis & Bockius
Attorney for Defendant
   Smart Papers LLC
1111 Pennsylvania Avenue, NW
Washington, DC  20004

/s/ Mark J. Byrne
**MARK J. BYRNE - #0029243**
Attorney for Plaintiffs