```
             IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        WESTERN DIVISION
```

Dorman Angel, et al.,              )
                                   )
                 Plaintiffs,       )   Case No. 1:01-CV-467
                                   )
        vs.                        )
                                   )
United Paperworkers                )
International Union (PACE)         )
Local 1967, et al.,                )
                                   )
                 Defendants.       )

O R D E R

This matter is before the Court on motions for summary judgment filed by Defendants International Paper Company (Doc. No. 77), United Paperworkers International Union (PACE) Local 1967 (Doc. No. 98), United Paperworkers International Union (Doc. No. 101), and Smart Papers, LLC (Doc. No. 102). For the reasons set forth below, International Paper Company's motion for summary judgment is **MOOT**; the remaining motions for summary judgment are well-taken and are **GRANTED.**

I. Background

The facts at the summary judgment stage of this case have not changed appreciably since the Court outlined the factual allegations of the second amended complaint in ruling on Rule 12(b)(6) motions filed by the Defendants. The Court, therefore, will only provide a brief synopsis of the pertinent facts here and refers the reader to the Court's earlier order for a more complete description of the events in this case. See Doc. No.

67.

This case is one of a series of lawsuits that arose after Defendant International Paper Company ("International Paper") sold its Hamilton B Street Mill to Smart Papers, LLC ("Smart Papers") in January 2001.[1]  Plaintiffs in this case are former employees of International Paper and members of both the United Paperworkers International Union (PACE) Local 1967 ("PACE Local 1967") and the United Paperworkers International Union ("PACE International") (sometimes referred to collectively as "the Unions").  While employed by International Paper, Plaintiffs' terms and conditions of employment were governed by a 1990 collective bargaining agreement ("the CBA") between International Paper and the Unions.  As the Court explained in its earlier order, in September 1996, the expiration date of the CBA was extended to September 1998 when International Paper and the Unions entered into an Extension Agreement.  Neither of these two documents included any severance pay provisions.

In May 1996, however, International Paper and the Unions entered into an agreement entitled the Hamilton Mill Reconfiguration Agreement Phase II ("the Reconfiguration Agreement").  See Doc. No. 34, Ex. F; Second Bray Dep. Ex. 1.  The Reconfiguration Agreement did include a severance pay provision.  As is relevant here, the Reconfiguration Agreement

---

[1]     The other cases are Dalesandro v. International Paper Co., Case No. 1:01-CV-109 (S.D. Ohio)(Beckwith, C.J.) and Campbell v. International Paper Co., Case No. 1:01-CV-527 (S.D. Ohio)(Beckwith, C.J.).

indicates that the parties agreed that severance benefits would be provided to "[e]mployees who may be involuntarily separated as a result of the reconfiguration[.]"  Id. § II.B.  The summary plan description ("SPD") for the severance plan enacted pursuant to and incorporated by reference into the Reconfiguration Agreement similarly states that severance benefits will be paid to "any Eligible Employee under Section 1.6(b) whose employment is involuntarily terminated during the Effective Time[.]"  Second Bray Dep. Ex. 2, § 2.2.  An "Eligible Employee" is one "whose employment is or will be involuntarily terminated as a result of the Hamilton Mill Reconfiguration during the Effective Time[.]"  Id. § 1.6(b).  "Reconfiguration" is defined as "the elimination of positions as a result of cost reductions at the Hamilton Mill."  Id. § 1.10.

When International Paper sold the Mill to Smart Papers, Plaintiffs applied for and received jobs with Smart Papers.  In conjunction with the sale of the Mill, International Paper and the Unions entered into an agreement entitled "Effects Bargaining Package" ("the EBP") which, in pertinent part, provided severance benefits only to those former International Paper employees who did not receive offers of employment from Smart Papers.  Second Bray Dep. Ex. 3.  The parties further agreed that the severance provisions of the Reconfiguration Agreement did not apply.  Because Plaintiffs received offers of employment from Smart Papers, they did not receive any severance benefits from International Paper.  It is undisputed that although the PACE

3

International Constitution and the PACE Local 1967 by-laws entitle the rank and file members of the Union to ratify collective bargaining agreements, the Unions did not submit the EBP to the Local members for approval.

Plaintiffs filed a second amended complaint which asserted a number of claims against the Unions, International Paper, and Smart Papers.  On motions filed by the Defendants, the Court dismissed Counts II, III, IV, V, VIII, X, and XII of the second amended complaint pursuant to Rule 12(b)(6).[2]  The claims remaining after the Court's rulings on the motions to dismiss were as follows:

1. Count I - a claim for breach of duty of fair representation versus PACE Local 1967 and PACE International pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and 28 U.S.C. § 1337 based on the Unions' failure to submit the EBP to the rank and file for ratification.

2. Count VI - claims for age discrimination versus International Paper and (apparently) PACE Local 1967 and PACE International pursuant to the Ohio Civil Rights Act, Ohio Revised Code Chapter 4112.  This Count alleges that the EBP had discriminatorily impacted the Plaintiffs by denying them severance benefits on the basis of age.  Plaintiffs, however, voluntarily dismissed Count VI as to International Paper with prejudice in response to the Court's show cause order.  See Doc. Nos. 85 & 87.  The wording of Count VI suggested that Plaintiffs were asserting age discrimination claims against the Unions as well.  This, however, was apparently not the case, as Plaintiffs clarified in their memorandum in opposition to the Unions' pending motions for summary judgment. See Doc. No. 111, at 2 ("As a result of this Court's ruling on the Defendant's [sic] motion to dismiss, the remaining claim against Pace and International Pace are [sic] contained in count one of the complaint.").

---

[2] The Court also dismissed claims of certain Plaintiffs in Count I because the statute of limitations had expired as to them.  The remaining Plaintiffs, however, still had live claims in Count I after the Court's ruling on the motion to dismiss.

4

3. Count VII - a claim versus Smart Papers as an aider and abettor of the age discrimination claim alleged against International Paper in Count VI.

4. Count IX - a claim for disability discrimination versus International Paper on behalf of Plaintiff Kenneth Bauer pursuant to the Ohio Civil Rights Act. Plaintiffs' response to the show cause order stated that the parties were attempting to settle this claim, but the Court has not been advised that a settlement has in fact been reached.

5. Count XI - a claim for age discrimination versus Smart Papers pursuant to the Ohio Civil Rights Act on behalf of Plaintiff Charles Campbell for failure to hire.

6. Count XIII - claims for age discrimination pursuant to the Ohio Civil Rights Act versus Smart Paper on behalf of Plaintiffs Jimmy Taylor, Michael Thomas, and Joseph Born. This count alleges that Smart Papers denied these Plaintiffs the jobs they desired because of age and offered higher paying jobs to similarly-situated, substantially younger applicants.

The Defendants each filed motions for summary judgment on the claims remaining against them. International Paper, however, did not move for summary judgment on Count IX of the complaint. In response to Smart Papers' motion for summary judgment (Doc. No. 102), Plaintiff submitted a memorandum which simply states: "On March 2, 2005, Defendant Smart Papers' [sic] filed a motion for summary judgment. Having reviewed the record, Plaintiffs submit no further argument thereto." See Doc. No. 116, at 1. Plaintiffs thus concede that summary judgment against them on their claims versus Smart Papers is appropriate. Accordingly, Smart Paper's motion for summary judgment is well-taken and is **GRANTED**. Counts VII, XI, and XIII of the second amended complaint are **DISMISSED WITH PREJUDICE.**[3]

---

[3] Smart Papers also moves for summary judgment on the disability discrimination claim in Count IX. Again, it is not

In their response (Doc. No. 87), to the Court's order to show cause why International Paper's motion for summary judgment should not be granted (Doc. No. 85), Plaintiffs withdrew their claim in Count VI with prejudice.  Accordingly, International Paper's motion for summary judgment on that claim is **MOOT.**  Additionally, Plaintiffs indicated in their response that they were attempting to reach a settlement with International Paper on Count IX.  To date, the Court has not been advised that the parties have settled that claim.  International Paper, however, has not moved for summary judgment on the claim and the Court, therefore, takes no position on its merits at this time.

Thus, remaining for consideration for the Court is whether the record presents triable issues of fact with respect to Plaintiffs' claims against the Unions in Count I.

## II. Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The evidence presented on a motion for summary judgment

---

clear to the Court whether Count IX states a claim against Smart Papers.  To the extent that it does, the issue is moot since Plaintiffs do not contest Smart Papers' motion for summary judgment.  In an abundance of caution, to the extent that Count IX could be construed to state a claim versus Smart Papers, it is dismissed with prejudice as well.

is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654 (1962). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be

shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule

56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  Id.; Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. Analysis

As indicated, Count I alleges that the Unions breached their duty of fair representation under the LMRA based on their failure to submit the EBP to the rank and file for ratification in accordance with the PACE International Union constitution and the Pace Local 1967 by-laws.  Collective bargaining unit members may bring suit against their union under the LMRA for breach of the union constitution.  Wooddell v. International Bhd. of Elec. Workers, Local 71, 502 U.S. 93, 101 (1991).  The Court also assumes for purposes of this case that a right to sue for breach

of the local by-laws exists here since the right to ratify collective bargaining agreements appears to be co-extensive of the same right in the PACE International constitution.  The Unions proffer a number of grounds for dismissal of Count I, but the Court agrees that summary judgment against Plaintiffs is appropriate because Plaintiffs were not injured by the Unions' failure to submit the EBP to the rank-and-file for ratification.

      At the time of their termination from International Paper, Plaintiffs had no entitlement to any severance benefits under any plan offered by International Paper.  Although the Reconfiguration Agreement and the accompanying severance benefits plan provided severance benefits for involuntary termination, the participants' involuntary termination was required to be as a result of the Mill Reconfiguration.  Reconfiguration was defined as the elimination of positions as a result of cost reductions at the Mill.  Plaintiffs, however, were not involuntarily terminated because of cost reductions at the Mill.  They were involuntarily terminated because International Paper sold the Mill to Smart Papers.  Thus, Plaintiffs would not have been entitled to receive any severance benefits from International Paper even if the Unions had not agreed to an EBP under which Plaintiffs were not eligible for benefits.  In other words, the Unions did not sign away a right to benefits that Plaintiffs possessed but for the agreement to the EBP without their consent.[4]  Conversely, if the

---

[4] Plaintiffs argue for the first time that the Unions bargained away their statutory WARN Act benefits when they agreed to the EBP.  This allegation is nowhere in the second amended

Unions had submitted the EBP to the rank-and-file for ratification, and if the rank-and-file had rejected the EBP, nothing would have changed for Plaintiffs - they still had no entitlement to severance benefits.  Supposing the rank-and-file would have rejected the EBP if they had an opportunity to vote on ratification, it is purely speculative whether further negotiations with International Paper would have resulted in a agreement which provided severance benefits to members who received job offers from Smart Papers.  Indeed, had the parties bargained to impasse on the issue of severance pay, International Paper could have unilaterally decided not to provide severance benefits for <u>any</u> union member who was involuntarily terminated as a result of the sale of the Mill, including members who did not receive job offers from Smart Papers.  <u>Honeywell Int'l, Inc. v. N.L.R.B.</u>, 253 F.3d 125, 131-32 (D.C. Cir. 2001).

Thus, the Unions sensibly reached an agreement which provided some severance benefits to the members who would be most adversely affected by the sale of the Mill - those without job offers from Smart Papers.  At the same time, although the EBP did not provide a benefit to Plaintiffs in terms of severance pay, it did not take away a benefit from them either.  The Unions' decision to agree to this particular EBP was within the wide range of reasonableness under which their representation of their constituents must judged.  <u>Journeyman Pipe Fitters Local 392 v.</u>

---

complaint, however, and, therefore, will not be considered at
this late date in the litigation.

N.L.R.B., 712 F.2d 225, 229 (6th Cir. 1983).  In addition, in this specific circumstance, the Unions' failure to submit the EBP to the membership for ratification in contravention of the PACE constitution and local by-laws was harmless to Plaintiffs because they never had an entitlement to receive severance benefits in the first place.  Moreover, the breach of the constitution was harmless because it is speculative whether a ratification vote on the EBP would have resulted in its rejection by the membership.  It is further speculative whether another round of negotiations between International Paper and the Unions would have concluded in an agreement which would have entitled Plaintiffs to receive severance benefits.

Accordingly, for the reasons stated, the Unions' respective motions for summary judgment on Count I of the second amended complaint are well-taken and are **GRANTED**.

<u>Conclusion</u>

In conclusion, for the reasons stated, the Unions' motions for summary judgment (Doc. Nos. 77 & 98) on Count I are well-taken and are **GRANTED.**  Count I is **DISMISSED WITH PREJUDICE.**  Smart Papers, LLC's motion for summary judgment (Doc. No. 102) is well-taken and is **GRANTED**.  Counts VII, IX, XI, and XIII are **DISMISSED WITH PREJUDICE.**  International Paper's motion for summary judgment (Doc. No. 101) is **MOOT**.

**IT IS SO ORDERED**

Date June 30, 2005                    s/Sandra S. Beckwith
                                 Sandra S. Beckwith, Chief Judge
                                  United States District Court