NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 05-4114

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

FEB 2 8 2007

LEONARD GREEN, Clerk

| | |
|---|---|
| DORMAN ANGEL, et al., ) | |
| ) | |
| Plaintiffs-Appellants, ) | |
| ) | |
| v. ) | ON APPEAL FROM THE UNITED |
| ) | STATES DISTRICT COURT FOR THE |
| UNITED PAPERWORKERS ) | SOUTHERN DISTRICT OF OHIO |
| INTERNATIONAL UNION (PACE) ) | |
| LOCAL 1967, UNITED ) | |
| PAPERWORKERS INTERNATIONAL ) | |
| UNION, INTERNATIONAL PAPER ) | |
| COMPANY, ) | |
| ) | |
| Defendants-Appellees, ) | |
| ) | |
| SMART PAPER LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Before: GIBBONS and McKEAGUE, Circuit Judges; and FORESTER, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiffs-appellants appeal the district court's dismissal of and grant of summary judgment on their claims pursuant to § 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a), § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and § 411(a)(1) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(1), against their former employer, International Paper

---

[*]The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

-1-

Company ("IP"), and the international and local unions of which they were members, the United Paperworkers International Union ("international union") and the United Paperworkers International Union Local 1967 ("local union," collectively "the Union"), attempting to recover severance pay to which the plaintiffs were allegedly entitled when IP sold the paper mill at which plaintiffs were employed ("B Street Mill"). For the following reasons, we affirm the district court's decision.

I.

IP acquired the B Street Mill and succeeded to the obligations established by a collective bargaining agreement ("CBA") between the previous owner, the Union, and the B Street employees. This CBA was effective until September 19, 1994, but an extension agreement extended it until September 21, 1998, and on a year-to-year basis thereafter until IP or the Union terminated it. The CBA itself contained no provision related to severance pay. The extension agreement noted, however, that "[a]ny job reductions and/or elimination of positions that may occur will be offset through normal attrition, reassignment and/or negotiated severance."

In May 1996, the Union and the previous owner of the B Street Mill entered into a reconfiguration agreement. The reconfiguration agreement, to which IP also succeeded, provided terms under which employees would receive severance pay. The B Street Mill was undergoing a two-year reconfiguration which would result in dramatic workforce reductions. Accordingly, the reconfiguration agreement provided that employees who were involuntarily terminated as a result of cost reductions at the B Street Mill would receive severance pay. This portion of the reconfiguration agreement was dubbed Severance Policy # 817.

On December 29, 2000, IP sold the B Street Mill to Smart Papers. The asset purchase agreement provided that Smart Papers would accept employment applications from the IP employees

-2-

then working at the B Street Mill. If Smart Papers hired fewer than 219 of the IP employees, the asset purchase agreement provided that Smart Papers would pay a pro rata share of the severance pay owed to each employee below the 219 minimum that Smart Papers declined to hire.

In January 2001, pursuant to the NLRA, IP began effects bargaining with the Union to negotiate the impact of the sale on the employees of the B Street Mill. IP and the Union concluded an effects bargaining package ("EBP"), which provided in pertinent part:

> As a result of the sale of the Hamilton B Street Mill to SMART Papers, LLC, International Paper proposes the following benefits to the PACE International Union and its affiliate Local 1967.
>
> The following proposal is contingent upon timely ratification of this package by January 31, 2001.
>
> SEVERANCE
>
> Employees who do not receive an employment offer from SMART Papers will be paid 60 hours pay at the rate of their current permanent classification (not red circle rates) on the date of sale for each full and pro-rata year of continuous service with International Paper. Payments will be made as a lump sum within 30 days following date of sale and this payment will be subject to all applicable taxes.
>
> Employees who do receive an employment offer from SMART Papers will not be entitled to severance pay unless they are terminated from SMART Papers, through no fault of their own, within eighteen (18), months of the sale date.
>
> To be eligible for severance pay, an employee must be actively at work on the date of sale. Employees on disability or other approved leaves must be released to return to work in their former classifications.
>
> The Union agrees that Severance Program 817, or any other Severance Program, does not apply, and that this severance agreement is the only severance agreement applicable to the employees of the Hamilton B Street Facility.

The ratification provision in the EBP was added in compliance with the international union's constitution and the local union's bylaws. The local union's bylaws provide:

> With the assistance of an authorized Representative of the International Union, the Bargaining Committee shall conclude agreements with Management subject to retification [sic] by the membership fo [sic] the Local Union.

Likewise, the international union's constitution provides:

> A collective bargaining agreement must be ratified and approved by a majority of the members covered by said agreement present and voting on the question by secret ballot before the same shall be executed on behalf of the Union[.]

Despite the requirement in the international union's constitution and the local union's bylaws that members ratify labor agreements negotiated by the Union, the EBP was never ratified by the membership. Rather, the international union's bargaining representative and the local union's president signed the EBP and it went into effect.

The plaintiffs in this case are one hundred fifteen IP employees who were terminated when IP sold the B Street Mill to Smart Papers. Pursuant to the EBP, the plaintiffs did not receive severance pay from IP because they were hired by Smart Papers. The plaintiffs, originally numbering seventy-five, plus twelve "John Does," filed a complaint against the local union, the international union, IP, and Smart Papers. The complaint asserted thirteen causes of action, of which five are at issue on appeal. The district court described the five relevant causes of action as follows:

> Count I asserts a claim against PACE International and PACE Local 1967 pursuant to 28 U.S.C. § 1337 and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. This count alleges that the Unions breached the local by-laws and the constitution of the International Union by ratifying the EBP without submitting the issue to the rank-and-file for ratification. This count also appears to allege that the Unions breached their duty of fair representation by not submitting the EBP to the membership for a vote.
>
> Count II asserts a claim against International Paper, PACE International, and PACE Local 1967 pursuant to Section 301 of the LMRA. Count II alleges that these parties breached the CBA and the Extension Agreement by entering into the EBP, which had the effect of denying Plaintiffs severance pay. Alternatively, Plaintiffs allege that these Defendants violated the LMRA by entering into the Mill Reconfiguration

Agreement without a membership vote. Even if there was a membership vote on the Mill Reconfiguration Agreement. Plaintiffs allege these parties breached the agreement by not paying severance upon their termination.

Count III asserts a claim against International Paper under the LMRA for breach of contract and promissory estoppel. Count III alleges that by virtue of the EBP, International Paper represented to Plaintiffs that in order to be eligible to receive severance pay, they would have to apply for employment with Smart Paper[s] and be rejected. However, Plaintiffs allege, there were certain unidentified "covert" employees to whom International Paper paid severance even though those employees did not apply[,] nor were they rejected, for employment with Smart Paper[s]. In fact, Plaintiffs allege, International Paper advised these "covert" employees that they could get severance pay without applying for positions with Smart Paper[s]. Thus, Plaintiffs contend, had they known they could have gotten severance without applying for new jobs, they would have preferred to take severance pay over continued employment with Smart Paper[s]. Plaintiffs also claim that International Paper breached the EBP through its alleged preferential treatment of the "covert" employees.

Count IV . . . asserts claims against PACE International and PACE Local 1967. Count IV alleges that the Unions violated 29 U.S.C. § 411(a)(1) by entering into the EBP without submitting it to the full membership for a vote.

Count V asserts claims against International Paper, PACE International, and PACE Local 1967. Count V consists of hybrid breach of fair representation/breach of CBA claims under Section 301 of the LMRA. Specifically, Count V alleges that the Unions breached their fiduciary duty to Plaintiffs by failing to submit the EBP to the membership for ratification and by failing to secure the severance pay which they claim is provided by the CBA and the Extension Agreement. This count also alleges that the Unions breached their duty of fair representation by failing to act on a grievance over severance pay filed by Larry McCreary, who, it should be noted, is not a plaintiff in this case. This count alleges that International Paper breached the CBA and the Extension Agreement by failing to give Plaintiffs severance pay. Finally, this count alleges that International Paper breached the EBP by failing to treat all employees equally thereunder.

The second amended complaint asserted the same claims on behalf of one hundred fifteen named plaintiffs and twelve "John Does."

The district court dismissed Counts II, III, IV, and V for failure to state a claim upon which relief could be granted. Count I was dismissed on statute of limitations grounds as to the plaintiffs

-5-

whose claims were not asserted until the second amended complaint. After discovery, the district court granted summary judgment to the defendants on Count I as to the remaining plaintiffs.

II.

The plaintiffs raise three issues on appeal: (A) whether the district court properly dismissed Counts II, III, IV, and V of plaintiffs' complaint, (B) whether the district court properly granted summary judgment to the Union on Count I of plaintiffs' complaint, and (C) whether the district court properly dismissed the Count I claims brought on behalf of plaintiffs who were added in the second amended complaint. We affirm the district court's decision on the first two issues, and this conclusion obviates the need to consider the third.

A.

Because Counts II, III, IV, and V of plaintiffs' complaint were dismissed pursuant to Fed. R. Civ. P. 12(b)(6), we review the district court's decision *de novo*. *Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004). We construe the complaint in the light most favorable to the plaintiffs' case and accept as true all well-pleaded factual allegations. *Cooper v. Parrish*, 203 F.3d 937, 944 (6th Cir. 2000). The complaint "need only put a party on notice of the claim being asserted against it" to state a claim on which relief can be granted. *Memphis*, 361 F.3d at 902. "Dismissal is not appropriate unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims that entitle them to relief." *Cooper*, 203 F.3d at 944.

1.

In Count II, the plaintiffs bring their breach of contract claim pursuant to § 301 of the LMRA. Section 301 confers jurisdiction to the federal district courts over suits alleging breaches of labor

agreements:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 jurisdiction does not extend to suits challenging the validity of a CBA. *Heussner v. Nat'l Gypsum Co.*, 887 F.2d 672, 676 (6th Cir. 1989). Therefore, the federal district courts lack jurisdiction over any suit where the claimed § 301 breach was caused by the enactment of a subsequent labor agreement. *Adcox v. Teledyne, Inc.*, 21 F.3d 1381, 1388 (6th Cir. 1994). This is because an allegation of such a breach is implicitly a challenge to the validity of the subsequent labor agreement.

Here, plaintiffs claim that the EBP is invalid because it was not properly executed. As this explicitly challenges the validity of a labor agreement, the district court lacked jurisdiction over this claim under § 301. Furthermore, plaintiffs claim that IP and the Union breached the previous labor agreements, which they allege guaranteed severance pay to all employees, in two ways: (1) by executing the EBP, which only provides severance pay to certain employees; and (2) by following the terms of the EBP and failing to pay severance to all employees. Because the EBP, by its terms, superceded all previous severance pay agreements, each of these claims implicitly challenges the validity of the EBP. Therefore, the district court lacked jurisdiction under § 301 and properly dismissed Count II.

2.

Count III alleges a promissory estoppel claim under § 301 of the LMRA based on plaintiffs' assertion that IP breached the terms of the EBP by not paying severance according to the EBP's

terms. Section 301 authorizes contract claims premised on the doctrine of promissory estoppel. *See Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1217 (6th Cir. 1987). However, an allegation of differential treatment of employees constitutes a claim of unfair labor practices. *See J.I. Case Co. v. NLRB*, 321 U.S. 332, 338-39 (1944); 29 U.S.C. § 158(a)(5) (requiring employers to bargain collectively, which implies uniform treatment of employees during collective bargaining). Because the NLRB has exclusive jurisdiction over all claims of unfair labor practices, a district court must dismiss these claims. *Martin v. Lake County Sewer Co.*, 269 F.3d 673, 680 (6th Cir. 2001).

Here, plaintiffs allege that IP paid severance to some employees who had not applied for employment with Smart Papers and were not rejected by Smart Papers, which are prerequisites to severance pay under the EBP. The plaintiffs claim they detrimentally relied upon IP's misrepresentation that an employee would receive severance pay only if the employee was denied ongoing employment with Smart Papers.[1] Plaintiffs' claim is based upon IP's alleged differential treatment of employees under the EBP: some employees were required to meet the prerequisites to receive severance pay whereas other employees were not. Therefore, the district court properly dismissed Count III.

3.

Count IV alleges that the Union's failure to submit the EBP to the union membership for ratification denied plaintiffs the equal voting rights provided by § 411(a)(1) of the LMRDA. Section 411(a)(1) provides:

---

[1] The court need not consider plaintiffs' additional allegation that IP breached the EBP by not paying severance to employees who accepted employment with Smart Papers but were terminated through no fault of their own because plaintiffs' counsel conceded at oral argument that none of the plaintiffs suffered this injury.

> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

29 U.S.C. § 411(a)(1). The purpose of § 411(a)(1) is to ensure "that members and classes of members shall not be discriminated against in their right to nominate and vote." *Nienaber v. Ohio Valley Carpenters Dist. Council*, 652 F.2d 1284, 1286 (6th Cir. 1981) (quoting *Calhoon v. Harvey*, 379 U.S. 134, 139 (1964)). The statute was not "not designed to grant federal courts 'jurisdiction to enforce union constitutions and by-laws across the board.'" *Id.* (quoting *Bunz v. Moving Picture Mach. Operators' Protective Union*, 567 F.2d 1117, 1121 n.17 (D.C. Cir.1977)). Thus, a violation of a union's constitution or by-laws constitutes a violation of § 411(a)(1) if the violation "'results in discriminatory deprivation of an individual's right to cast a meaningful vote.'" *See id.* (quoting *Blanchard v. Johnson*, 532 F.2d 1074 (6th Cir. 1976)).

The crux of the alleged § 411(a)(1) violation is that the unions did not follow the ratification procedures required by their respective constitution and bylaws. Here, plaintiffs allege that all members employed by IP and represented by the Union were denied the right to vote on the EBP. Because the alleged violation of the Union's constitution and by-laws resulted in the universal denial of a ratification vote, rather than the denial of a vote to some but not others, plaintiffs fail to allege the discrimination required by § 411(a)(1),[2] and the district court properly dismissed Count IV.

---

[2]Plaintiffs' attempt to circumvent this requirement by arguing that the Union's president was given a vote on the EBP, whereas the rank-and-file members were not, cannot succeed. The president's role in negotiating the EBP does not constitute a vote within the Union's constitution and by-laws because those documents envision a ratification vote as an act distinct from the negotiation of the labor agreement. Accepting plaintiffs' argument would effectively eliminate the discrimination requirement because any action by a union that is not submitted to a vote of the membership is presumably undertaken by some member of the union's leadership.

4.

Count V asserts a hybrid § 301 claim against IP and the Union. Hybrid § 301 actions involve both a claim against the plaintiff's employer under § 301 of the LMRA, alleging breach of a labor agreement, and a claim against the union for breach of the duty of fair representation that is implied under the NLRA. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983). The two claims are "inextricably interdependent." *Id.* at 164. "[T]o recover against *either* the Company *or* the Union, [the plaintiff] must show that the Company breached the Agreement *and* that the Union breached its duty of fair representation. Unless [the plaintiff] demonstrates *both* violations, he cannot succeed against either party." *Bagsby v. Lewis Bros., Inc., of Tenn.*, 820 F.2d 799, 801 (6th Cir. 1987) (internal citation omitted).

Here, plaintiffs claim that IP: (1) breached the CBA and the extension agreement by not paying all employees severance and (2) breached the EBP by treating employees differently under it, *i.e.*, paying severance to some employees who did not apply for jobs at Smart Papers and thus did not meet the EBP's prerequisites for severance pay. As already discussed above, neither of these alleged breaches are cognizable under § 301. Because the plaintiffs cannot succeed against IP, their hybrid § 301 claim against IP and the Union must fail, and the district court properly dismissed Count V.

B.

Because the district court granted summary judgment to the Union on Count I, we review the district court's decision *de novo*, reapplying the standard used by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits,

if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold*, 369 U.S. 654, 655 (1962). Summary judgment must be entered against the opposing party, however, if it "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If "a reasonable jury could return a verdict for the nonmoving party," summary judgment should be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Count I claims that the Union breached the CBA in violation of § 301 of the LMRA and breached its duty of fair representation in violation of § 9(a) of the NLRA when it failed to submit the EBP for ratification by the union members as required by the Union's constitution and by-laws. Union members may bring suit under § 301 against a union for breach of a union constitution. *Tisdale v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Can., Local 704*, 25 F.3d 1308, 1310 (6th Cir. 1994). A plaintiff can bring a claim against a union for a breach of its duty of fair representation arising from §9(a) of the NLRA by invoking the district court's jurisdiction under 28 U.S.C. § 1337. *Storey v. Local 327, Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 759 F.2d 517, 518-19 (6th Cir. 1985). However, summary judgment was appropriate in this case because plaintiffs have failed to demonstrate that the Union's failure to submit the EBP to a vote entitles them to the damages that they claim: (1) denied severance pay, (2) the denied damages provided by the WARN Act, and (3) emotional distress.

The plaintiffs cannot recover damages for denied severance pay because none of the labor

agreements in force prior to the EBP—the CBA, the extension agreement, or the reconfiguration agreement—guaranteed the plaintiffs any severance pay. Despite plaintiffs' arguments to the contrary, the reconfiguration agreement, which did provide severance pay to employees terminated during a two-year plant reconfiguration, cannot reasonably be read to provide any severance pay related to the sale of the B Street Mill. Plaintiffs did not lose severance pay because the unions did not submit the EBP to a vote; even if the rank-and-file union members had voted against the EBP, the plaintiffs would not have received severance pay under the prior labor agreements. Moreover, as the district court noted, it is too speculative to assume that disapproval of the EBP would have resulted in further negotiations that ultimately would have resulted in severance pay for the plaintiffs.

The plaintiffs cannot recover damages for denied damages provided by the WARN Act because this was not caused by the Union's failure to submit the EBP to a vote. Plaintiffs argue that the IP violated the WARN Act because it failed to provide sixty days notice of the closing and sale of the B Street Mill, *see* 29 U.S.C. § 2102, entitling them to damages, *see* 29 U.S.C. § 2104. They claim that the EBP denied them these damages because when they interviewed for and received jobs with Smart Papers, they became ineligible for WARN damages. However, plaintiffs could have chosen not to interview with Smart Papers, ensuring receipt of WARN damages. While this choice would have precluded plaintiffs from receiving severance pay under the EBP, the plaintiffs would have been in no different a position than if EBP had failed a ratification vote; as discussed above, plaintiffs would not have received severance pay under the prior labor agreements. Therefore, the Union's failure to submit the EBP to a ratification vote did not cause the loss of any damages provided by the WARN Act.

Finally, plaintiffs were not entitled to damages for emotional distress for the Union's failure

to submit the EBP to a ratification vote. Plaintiffs have failed to demonstrate any consequences resulting from the Union's actions, so any emotional distress suffered by the plaintiffs must only be from their general concern that the Union follow its constitution. The Union's conduct in this case is not sufficiently exceptional or extreme to merit damages for emotional distress. *See Cantrell v. Int'l Bhd. of Elec. Workers, Local 2021*, 32 F.3d 465, 468 (10th Cir. 1994) (collecting cases illustrating the standard).

As the plaintiffs failed to demonstrate any damages from the Union's failure to submit the EBP to a ratification vote, the district court properly granted summary judgment.

C.

Because the district court properly granted summary judgment for the Union on Count I, this court does not need to consider whether the district court properly dismissed the Count I claims brought on behalf of plaintiffs who were added in the second amended complaint.

III.

For the foregoing reasons, we affirm the district court.